**MOHR, INC., an Oregon Corporation, Plaintiff,**

v.

**The BANK OF CALIFORNIA, N. A., a National Banking Association, Defendant.**

**The BANK OF CALIFORNIA, N. A., a National Banking Association, Third-Party Plaintiff,**

v.

**Ronald E. MOHR et al., Third-Party Defendants.**

**Civ. No. 75–420.**

United States District Court, D. Oregon.

Jan. 11, 1978.

Henry A. Carey, Portland, Or., for plaintiff Mohr, Inc. and third-party defendant Ronald E. Mohr.

Leigh D. Stephenson, Portland, Or., for defendant and third-party defendant.

### OPINION

JAMES M. BURNS, District Judge.

The issue in this usury case is whether or not a bank can aggregate outstanding loans in amounts less than $50,000 advanced to a corporation pursuant to a line of credit, so that the aggregate debt can constitute "a loan or use of money involving a principal amount over $50,000" on which the bank can charge any interest.

Plaintiff Mohr, Inc. (Company)[1] commenced this action pursuant to the National Bank Act, 12 U.S.C. § 86 (1970) alleging usury and seeking to recover twice the amount of interest it paid to defendant The Bank of California, N. A. (Bank) on specified promissory notes bearing 14% interest, executed between August 8, 1974, and November 4, 1974.[2] Jurisdiction stems from 28 U.S.C. §§ 1331(a) and 1355.

Defendant Bank has moved the court for summary judgment against plaintiff on plaintiff's claim against the Bank.[3] There are no material issues of fact. For reasons set out hereafter, I grant defendant's motion for summary judgment.

Plaintiff Company began borrowing from defendant Bank in 1969, when the Bank's Loan Committee authorized a $100,000 line of credit to the Company. The line of credit did not legally obligate the Bank to loan that, or any other amount, to the Company. It did, however, create what might be called a "moral obligation" on the part of the Bank to loan the Company up to $100,000, in the aggregate, if the Company's credit-worthiness did not deteriorate.

The Bank and Company used what is known as accounts receivable financing. It functioned as follows, in simplified form. As accounts receivable arose, Ronald Mohr would present a group of them to the Bank. The Bank would then loan the Company 80% of their face value. As the Company received payments on an account, it generally applied them toward liquidation of the note executed upon that account. At any given time, several notes were outstanding.

After December, 1972, all notes were secured by a blanket security interest in the Company's accounts receivable, inventory and contract rights, and were guaranteed by Ronald and Sharon Mohr's continuing guarantee in an unlimited amount. The notes were further guaranteed by an assigned life insurance policy on Ronald Mohr's life. On March 18, 1975, all outstanding notes were consolidated into a single note.[4]

Each note specified in the complaint was for an amount less than $50,000. At the time each note was executed, however, the Company's aggregate debt to the Bank exceeded $50,000 exclusive of the loan evidenced by that note. The amount of the aggregate debt fluctuated, ranging between $117,514.95 and $165,176.98.[5]

Prior to August, 1974, the rate of interest charged by the Bank did not exceed 11¾% per annum.[6] Beginning with the note executed on August 14, 1974, the notes bore a 14% per annum rate of interest.

The statute under which plaintiff is suing, 12 U.S.C. § 86 (1970), provides, in relevant part, that a person who has paid a greater rate of interest than permitted by § 85 may recover twice the amount of interest paid. 12 U.S.C.A. § 85 (1977 Pocket Part) provides, in relevant part, that a National Bank may charge interest at a rate allowed to a state bank by state law.

At all relevant times, ORS 708.480(7) provided that:

> On a loan or use of money involving a principal amount over $50,000, there is no

---

1. Mohr, Inc. was a building contractor which sold and installed doors, windows and structural components for residential and commercial buildings. Ronald Mohr was the chief executive officer and a shareholder and director in Mohr, Inc.

2. Eight notes are attached to the complaint. Only seven bear 14% interest. The note executed on August 8, 1974, bears 11¾% interest. The complaint makes no claim of usury other than the charging of 14% interest.

3. Defendant has not moved for summary judgment as to its counterclaim or third party complaint.

4. That note is currently delinquent and forms the basis for the Bank's counterclaim and third-party complaint.

5. The Company's debt to the Bank exceeded $100,000 from November, 1972, to December, 1974. It reached a peak of $294,232 in March, 1974.

6. Defendant Bank calculates its interest rates based on a 360-day year. When recomputed on a 365-day basis, its 11¾% rate does not exceed 12%.

limitation on the interest which banks or national banks may charge. ORS 708.-480(7) (1973).[7]

The maximum rate of interest allowed on a loan to or use of money by a corporation in a principal amount *less* than $50,000 was 12% per annum. ORS 708.480(1)(a) (1975).

Plaintiff contends that since each note specified in the complaint was for an amount less than $50,000, the 12% interest limitation applied, and the Bank knowingly charged usurious interest by reason of the 14% rate.

The Bank contends that the aggregate debt, rather than the face amount of each note, determines whether there is "a loan or use of money involving a principal amount over $50,000." It argues that, because the plaintiff's aggregate debt exceeded $50,000 at all relevant times, there was no limitation upon the interest it could charge, and the notes were therefore not usurious.

ORS 708.480(7) (1973) is one of a series of Oregon statutes designed to exempt transactions involving more than $50,000 from the usury laws. Reference to the other statutes in the series is helpful in determining whether ORS 708.480(7) (1973) permits aggregation.

In 1971, the Oregon legislature enacted the first such statute, ORS 82.125, which provides:

Notwithstanding any other provisions of this chapter, the defense of usury applies only to transactions that involve an amount of $50,000 or less. ORS 82.125 (1975).

In 1973, the legislature passed ORS 708.-480(7) (1973) to conform chapter 708, the banking code, to ORS 82.125. It also amended ORS 82.010 to conform to ORS 82.125 by adding a section which provides:

(4) Except as provided in subsection (5) of this section, the limitations of this section shall not apply to any contract or obligation in an amount in excess of $50,-000, and the parties to such contract or obligation may agree in writing to the payment of interest at a rate in excess of those set forth in subsection (1), (2), or (3) of this section. ORS 82.010(4) (1975).

Plaintiff emphasizes the phrase "contract or obligation" in ORS 82.010(4), arguing that it refers to single transactions only and thus aggregation of several loans is permitted only when they are made pursuant to an agreement which legally obligates the bank to make the advances. That phrase, however, appears to have been used to make 82.010(4) conform to the language in 82.010(3). There is no evidence that it was intended to limit the potentially broader terms "transactions" (ORS 82.125) and "loan or use of money" (ORS 708.480(7)).

The Senate Financial Affairs Committee and the Financial Affairs Subcommittee of the House State and Federal Affairs Committee heard testimony on Senate Bill 489, which was enacted as ORS 82.125, the original statute to which the others were conformed. Minutes of those committees indicate that the purposes of the over-$50,000 exemption were to:

1) prevent pressure on small commercial borrowers to incorporate to avoid the interest ceiling, thus causing them to suffer tax disadvantages; and

2) assist in attracting credit for real estate development during times of tight money when lenders would otherwise go to states which allow higher interest rates.

There is some evidence that the amendment was intended to clarify the fact that aggregation is permitted. Such after-the-fact declarations do not shed much light on the intent of the legislature when enacting the original statute. Accordingly, I gave no weight to such evidence in determining that ORS 708.480(7) (1973) permits aggregation of advances made pursuant to a line of credit.

---

7. ORS 708.480(7) was amended in 1975 to provide:

"On a loan or use of money involving a principal amount over $50,000, or on a commitment for a loan or use of money involving a principal amount over $50,000, there is no limitation on the interest which banks or national banks may charge. For the purposes of this subsection, in determining if a loan is for an amount over $50,000, all loans or commitments to loan to a single borrower may be considered in the aggregate."

Minutes of Senate Financial Affairs Committee March 22, 1971; Minutes of Financial Affairs Subcommittee of the House State and Federal Affairs Committee April 19, 1971.

Interpreting ORS 708.480(7) (1973) to prohibit aggregation of advances made pursuant to a line of credit would thwart those purposes by restricting the types of financing arrangements banks can use and still remain within the statute's exemption. Thus, there would still be pressure to incorporate on commercial borrowers seeking a line of credit, and to the extent that lines of credit are employed, lenders would not be attracted to Oregon.

Additionally, the exemption was thought to be appropriate because borrowers who are sufficiently credit-worthy to secure a commercial loan of more than $50,000 are not the uninformed, unsophisticated borrowers the usury laws are designed to protect. Minutes of Senate Financial Affairs Committee March 22, 1971; Minutes of Financial Affairs Subcommittee of the House State and Federal Affairs Committee April 19, 1971. A proposition that one who is willing and able to borrow $51,000 from a bank in one loan is sophisticated, whereas one who is willing and able to borrow the same amount in several loans is not seems dubious, indeed.

While events have shown that the Company may not have been long on business skill, nothing in the record reflects that it (or its chief officer) was short on sophistication as a borrower. It was sufficiently credit-worthy to secure loans totalling far in excess of $50,000. Ronald Mohr was an experienced businessman; he handled all loan negotiations. Thus it is not necessary to strain to interpret ORS 708.480(7) (1973) in a way which will protect him.

"There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of oversolicitude for the letter than to wince at carrying out that purpose because the words do not formally quite match with it." *Federal Deposit Ins. Corp. v. Tremaine*, 133 F.2d 827, 830 (1943) (*L. Hand, J.*)

There are only three cases which interpret statutes similar to ORS 708.480(7) (1973). They do not directly relate to this case, but they are helpful in that they indicate that aggregation has been or might be allowed under some similar statutes.

The court in *Irving Trust Company v. Smith*, 349 F.Supp. 146, 149 (S.D.N.Y.1972) rejected as "specious" the defendant's argument that two $4,000 notes which were cross collateralized with other much larger notes were not exempt "advances of money . . . to an amount not less than five thousand dollars."

*Sparkman & McLean Income Fund v. Wald*, 10 Wash.App. 765, 520 P.2d 173 (1974) held that the smaller of two loans represented interest and thus the aggregation of the two could not constitute a "transaction which involves more than $100,000." The court, however, noted that such a transaction could involve two notes each for less than $100,000. ORS 82.125 contains the word "transactions."

*Citizens & Southern DeKalb Bank v. Watkins*, 236 Ga. 759, 225 S.E.2d 266 (1976) held that the bank could not aggregate loans which were made independently and not pursuant to an original agreement obligating the bank to make each of them. The court, however, regarded the presence of the word "any" as indicating that the statute applied to single transactions only. ORS 708.480(7) (1973) does not contain the word "any."

ORS 708.480(7) (1973) exempts not only a loan, but also "a use of money" in an amount over $50,000. "[T]here is no canon against using common sense in construing laws as saying what they obviously mean." *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929) (*Holmes, J.*). Plaintiff clearly had the use of more than $50,-000 at all relevant times.

In order to prevent lenders from evading usury laws through transactions which are loans in substance but not in form, the courts will look through the form to the substance of the transaction. In the same

spirit, it is well to prevent a borrower from using the usury law as a sword when in substance although not in form he has secured a loan of more than $50,000.

I hold that a bank may aggregate outstanding loans advanced to a borrower pursuant to a line of credit in order to determine whether there has been "a loan or use of money involving a principal amount over $50,000" entitling it to an exemption from interest rate limitations under ORS 708.-480(7) (1973). I find and hold that plaintiff's debt to defendant exceeded $50,000 at all relevant times. I therefore grant defendant's motion for summary judgment on plaintiff's claim against defendant. Counsel should submit an order accordingly. The case as between the Company and the Bank only should be set for call on Monday, February 16, 1978.