[No. 44663.   En Banc.   January 24, 1980.]

JOSEPH E. O'BRIEN, ET AL, *Appellants,* v. SHEARSON
HAYDEN STONE, INC., *Respondent.*

*Carl G. Koch* and *Terence P. Lukens* (of *Karr, Tuttle,
Koch, Campbell, Mawer & Morrow*), for appellants.

*Fredric C. Tausend* and *Rex B. Stratton* (of *Schweppe,
Doolittle, Krug, Tausend & Beezer*), for respondent.

*Richard O. Scribner* on behalf of Securities Industry
Association and *Dale B. Ramerman* on behalf of Merrill
Lynch, Pierce, Fenner & Smith, amici curiae.

DOLLIVER, J.—The first opinion in this case was filed on
October 19, 1978, and can be found in 90 Wn.2d 680, 586
P.2d 830 (1978). We adhere to that opinion, but add the
following comments:

The heart of the analysis of the defendant is that the
Restatement (Second) Conflict of Laws § 203, comments *a*

and *b* (1971) must be read harmoniously. This has been done.

■ Comment *a* to section 203 requires the rate of interest to be stipulated in the contract:

> The rule of this Section applies only when (1) the interest rate *stipulated* in the contract is permitted in a state which has a substantial relationship to the transaction and the parties and (2) is not greatly in excess of the rate permitted by the general usury statute of the state of the otherwise applicable law. Application of the rule is not prevented by the fact that the state with the saving law authorizes a rate of interest greatly in excess of that permitted by the state of the otherwise applicable law. The rule is applicable in such a situation provided that the rate of interest *stipulated* in the contract is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law.

(Italics ours.)

Under the circumstances envisioned in comment *a*, the fact that New York authorizes up to 25 percent interest is immaterial if the rate of interest stipulated or provided for in the contract is not greatly in excess of that permitted by the laws of Washington, *i.e.*, 12 percent. Thus, even though the contract was governed by New York law, if it had a provision/stipulation that 13 or 14 percent would be the highest rate permitted, the contract would be valid. *See* comment *b*. This was not done. No actual rate was stipulated or provided for in the margin account contracts. Rather, the rate of interest was open ended, and it was permissible that it be as high as 25 percent, the maximum rate of interest in New York. The contract cannot be sustained against a charge of usury under Washington law.

Again, we hold (1) the summary judgment of the trial court as to the applicable law is reversed; (2) the judgment of the trial court as to the method of computing interest is affirmed; (3) the case is remanded to the Superior Court to divide the certified class into subclasses which will allow

proper treatment under the conflict of laws analysis contained in the opinion filed in this case on October 19, 1978, and herein.

ROSELLINI, WRIGHT, HICKS, and WILLIAMS, JJ., concur.

HOROWITZ, J. (concurring in part; dissenting in part)—The majority agrees the State of New York has a substantial relationship to the securities margin contract between the defendant stockbroker and this plaintiff, as well as similar contracts between the defendant and Washington residents. Accordingly, under Restatement (Second) Conflict of Laws § 203 (1971), relied upon by the majority as a correct expression of the rule determining whether a usurious rate has been charged, the relationship between New York's usury law and Washington's usury law must be considered.

Prior to the American Law Institute's adoption of section 203, this court long ago adopted the rule that "the parties to a contract may make the same with reference to the laws of any state or country and have their contractual rights governed thereby, provided only that such laws have a real and not a mere fictitious connection with the subject–matter of the transaction." *Crawford v. Seattle, Renton & S. Ry.*, 86 Wash. 628, 635, 150 P. 1155 (1915). Since the majority holds that the State of New York has a substantial relationship to the securities margin contract, the New York law would govern under the rule just quoted if the rate of interest charged were lawful under New York law.

Restatement (Second) Conflict of Laws § 203 (1971), however, adds a further requirement, namely, that the rate of interest permissible in the state to which the contract has a substantial relationship must be one "not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188" (in this case, Washington).

In explaining the rationale of section 203, comment *b* states:

> A prime objective of both choice of law . . . and of contract law is to protect the justified expectations of the parties. Subject only to rare exceptions, the parties will expect on entering a contract that the provisions of the contract will be binding upon them. . . . Usury is a field where this policy of validation is particularly apparent.
>
> . . . Upholding a contract against the charge of usury by the application of the local law of one state, which has a substantial relationship to the transaction and the parties, can hardly affect adversely the interests of another state when the stipulated interest is only a few percentage points higher than would be permitted by the local law of the other state. Under these circumstances, the courts deem it more important to sustain the validity of a contract, and thus to protect the expectations of the parties, than to apply the usury law of any particular state.[1]

When we look to New York law on the question of permissible rates of interest we find that the legal rate is prescribed by the banking board at not less than 5 percent nor more than 8.5 percent per annum. If no rate is prescribed it is 6 percent per annum. N.Y. General Obligations Law § 5.501(1) (McKinney); N.Y. Banking Code § 14–a (McKinney); 7 Martindale–Hubbel Law Dictionary 1765 (1978). In the case of a securities margin contract for the purchase of stock, however, when the unpaid balance of the loan is payable on demand, a different section of the General Obligations Law applies, namely section 5–525. It provides that the applicable rate of interest may not exceed 25 percent per annum. A sharp distinction is thus made between ordinary contracts involving loans of money and securities margin contracts. For the latter, any rate *up to* a maximum of 25 percent per annum is lawful.

The question that presents itself is therefore whether the words "permissible in the state to which the contract has a substantial relationship" as contained in section 203 refer

---

[1]For a description of the theoretical justification for protecting the justified expectations of the parties to a contract, *see* H. Berman & W. Greiner, *The Nature and Functions of Law,* 608–14 (3d ed. 1972) under the heading "Why Should the Law Ever Protect the Expectation Interest?"

only to the maximum permissible rate even if that rate has not been charged rather than to the actual (also permissible) rate charged to and paid by the purchaser under the securities margin contract.

Comment *a* to section 203 makes it clear that the drafters of the Restatement intended that the actual rate charged should be considered in assessing the validity of the parties' interest choice of law provision. Comment *a* states that "[a]pplication of the rule is not prevented by the fact that the state with the saving law authorizes a rate of interest greatly in excess of that permitted by the state of the otherwise applicable law . . . provided that the rate of interest stipulated in the contract is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law."

Additionally, comment *b* to section 203 states that upholding a contract is justified "when the stipulated interest is only a few percentage points higher than would be permitted by the local law . . ." This comment assumes that the actual rate charged is considered in determining the validity of the parties' choice of law.

In an attempt to limit the interpretation that must be drawn from the language of comment *a* and comment *b*, the majority argues that the rate of interest charged in this case, derived from a formula set out in the contract, is not adequately "stipulated" in the parties' agreement. The commentary to the Restatement is intended to explain, not modify, its provisions. The verbs therefore must be considered synonyms; "stipulate" cannot be interpreted more restrictively than "provide," the language of section 203. To limit the application of the word "stipulate" to contracts in which the interest rate is explicitly set out in numbers and figures is to read out of section 203 any contract providing for a variable interest rate, with no apparent reason for refusing to protect a legitimate method of defining interest.

It is clear, therefore, that in applying section 203 of the Restatement (Second) Conflict of Laws the court should

consider the actual rate charged in a contract, and not the maximum permissible rate in the state with the saving law.

This answer is bolstered by generally understood policy reasons that lie at the bases of usury statutes and their interpretation.

A basic reason for a limitation of interest rates we must consider is the protection of borrowers from oppression. *See* Restatement (Second) Conflict of Laws § 203 (1971); RCW 19.52.020; *Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965). No oppression occurs when a rate of interest is neither charged nor paid. Hence, the fact that a very high maximum rate of interest is permissible under New York law can hardly be grounds for claiming oppression when that rate has not in fact been charged and the rate actually charged is lawful but not oppressive. What has been said is especially true when a securities margin contract is involved. Such a contract has a particular function for a particular kind of stock purchaser. Respondent stockbroker points out that an investment of $1,000 in a margin purchase of stock, plus a loan from the stockbroker to the customer secured by the stock purchased to pay for the remaining balance of the purchase price, enables the purchaser to buy approximately $2,000 worth of stock with the resulting possibility of receiving twice the dividends and twice the profits from stock appreciation. No financial exigency compels a customer to buy stock on margin. He simply seeks to obtain the benefits of what he considers to be an attractive speculation knowing the risks involved should the price of the stock go down. If the customer likes, he may avoid incurring interest charges at any time during the life of the loan by selling other securities he owns to satisfy his debit balance owing to the stockbroker or borrow sufficient funds from other sources to pay that debit balance. In fact, the customer is in legal control of the interest rate charged, since he can terminate the contract at any time by refusing to pay the margin and thus establish the effective interest rate for the contract over the life of the loan—the test adopted in the majority opinion. There is nothing

compulsory about the customer entering into a margin contract with a choice of law provision. The customer is not in the position of one buying necessities or other consumer goods. *See Gamer v. duPont Walston, Inc.*, 65 Cal. App. 3d 280, 286, 135 Cal. Rptr. 230 (1976), upholding the validity of the interest rate charged for a loan made under a securities margin contract containing a provision that New York law governs.

Considered in this light, it is understandable that New York law makes a sharp distinction between interest chargeable on ordinary loan contracts and interest chargeable on a securities margin contract. Accordingly, if we are to compare New York's authorized interest rate with Washington's maximum interest rate, it makes much more sense to look to the rate actually charged rather than a higher rate not charged which plays no role in the transactions entered into. In this case the effective rate of interest charged to the plaintiff, using the formula which the majority approves, was 14 percent per annum. This rate was not contrived; it came about because of an unanticipated short term rise in call money rates in New York beyond the stockbroker's control. When those rates went down, the stockbroker's interest rates to its margin account customers on their debit balances also went down. Fourteen percent per annum is not greatly in excess of 12 percent per annum, as was properly conceded by plaintiff's counsel during oral argument.

As noted in the Restatement (Second) Conflict of Laws § 203 (1971), already quoted:

> Upholding a contract against the charge of usury by the application of the local law of one state, which has a substantial relationship to the transaction and the parties, can hardly affect adversely the interest of another state when the stipulated interest is only a few percentage points higher than would be permitted by the local law of the other state.

A second basic reason to be considered is that when no unlawful rate has been charged, access to credit from out of

state sources should be protected by upholding the validity of the rate charged. Restatement (Second) Conflict of Laws (1971), at page 650 states:

A prime objective of both choice of law . . . and of contract law is to protect the justified expectations of the parties.

The discussion, after noting the insignificance of a few percentage points difference between the law of the state of substantial relationship and the law of the state of the otherwise governing law, also stated at page 650:

Under these circumstances, the courts deem it more important to sustain the validity of a contract, and thus to protect the expectations of the parties, than to apply the usury law of any particular state.

When, therefore, we seek to ascertain the meaning of the words "a rate of interest that is permissible" found in section 203, in relation to the words "not greatly in excess of [the otherwise permitted rate, *i.e.,* Washington's]" the words used address themselves to the actual rate charged rather than to an uncharged maximum rate. This construction gives effect to the realities of the transaction. A customer doesn't complain of something that *has not* happened to him, he complains of something that *has* happened to him. In this case, New York's 25 percent maximum rate was not used. It had no effect on the plaintiff or on any Washington resident.

In sum, the majority relying on Restatement (Second) Conflict of Laws § 188(3) (1971), upholds the security margin account provision that New York law governs—that law having a substantial relationship to the contract. That law is relevant to the facts of this case in which the effective rate of interest charged was 14 percent per annum. That rate was permitted and lawful under New York law even if higher rates that might have been charged but were not in fact charged, were also permitted and lawful. Restatement (Second) Conflict of Laws § 203 (1971), which the majority

adopts as Washington law, if construed to require application of New York's uncharged 25 percent per annum maximum interest rate would needlessly frustrate the justified expectation of the parties that the security margin contracts were binding—a frustration clearly not intended by the drafters of the Restatement and not required by the policy considerations which underlie the protection against the exaction of usury.

Accordingly, the proposed subclass in plaintiff's class suit could consist only of Washington residents who are margin account customers who have heretofore executed a security margin contract with the defendant or its predecessors for whom it is liable, the contract providing that New York law would govern, provided further, however, that the effective rate charged is more than a "few percentage points higher than would be permitted by the local law of [Washington]." Restatement (Second) Conflict of Laws § 203, comment *b* (1971).

Except in respects noted, I concur in the majority opinion.

UTTER, C.J., and STAFFORD and BRACHTENBACH, JJ., concur with HOROWITZ, J.