Step # 10: Two lists evaluated for conformity with competing national goals.

AMERICAN TIMBER & TRADING CO., an Oregon corporation, on its own behalf and on behalf of all corporations and individuals who have been and are presently being charged interest rates in excess of the rates permitted by law, Plaintiffs/Appellants/Cross Appellees,

Lawrence Bernard, individually and Dr. Lawrence Bernard, Professional Corporation, Intervening Plaintiffs/Appellants,

v.

FIRST NATIONAL BANK OF OREGON, a national banking association, Defendant/Appellee/Cross Appellant.

Nos. 80–3230, 81–3214 and 81–3236.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1982.

Decided Oct. 22, 1982.

See also, 9th Cir., 511 F.2d 980.

& Hager, Fredric A. Yerke, Portland, Or., on brief.

Before CHOY, TANG, and BOOCHEV-ER, Circuit Judges.

BOOCHEVER, Circuit Judge:

These consolidated appeals, two direct appeals and a cross appeal, arise out of a class action under §§ 85 and 86 of the National Bank Act (Bank Act), for double recovery of usurious interest. Following determinations that two practices of First National Bank of Oregon (First National) resulted in usury, judgment was awarded to subclass III and several members of subclass IV. The district court declined to add prejudgment interest to the statutory double recoveries. It further ruled that the requirement of First National that certain borrowers maintain compensating balances resulted in usury as to two members of subclass IV but not as to a third member. We affirm.

BACKGROUND

By a complaint filed in 1970, plaintiffs sought double recovery under 12 U.S.C. § 86 of all interest paid on allegedly usurious loans. The class was certified and divided into three subclasses. A fourth subclass was later added. The claims of the first three subclasses were based on First National's use of the 365/360 method of computing interest on loans.[1] Subclass IV members were also subject to a requirement that they maintain demand deposit accounts with compensating balances equal to a percentage of their loans.

In 1971, the district court ruled that use of the 365/360 method of computing interest was knowingly usurious. The question was certified for interlocutory appeal, and we affirmed. *American Timber & Trading Co. v. First National Bank of Oregon,* 511 F.2d 980 (9th Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975). After our decision, subclass III was

Brad Littlefield, Goldsmith, Siegel, Engel & Littlefield, Phil Goldsmith, Portland, Or., for appellants.

James Westwood, Portland, Or., argued for defendant/appellee/cross appellant; R. Alan Wright, Miller, Nash, Yerke, Wiener

---

1. The essence of this method is that daily interest charged is 1/360th, not 1/365th, of the stated rate. Because the stated rate was at or near the legal maximum, charging subclass III members 365/360ths of the stated rate resulted in an excessive annual rate.

awarded double the amount of all interest paid under the usurious loans. They appeal the denial of prejudgment interest on that award (No. 80–3230).

The second appeal (No. 81–3214) and the cross appeal (No. 81–3236) raise numerous issues regarding the disposition by summary judgment of the claims of three members of subclass IV who had been required to maintain compensating balances as a condition of their loans. Those usury claims are based on the theory that the compensating balance requirement reduced the net loan principal available for their use and thus raised the effective interest rate. Although the original class complaint did not specify a compensating balance claim, plaintiffs sought to engage in discovery on the issue from the early stages of the lawsuit.

In 1976, after the interlocutory appeal, plaintiffs were allowed to resume discovery on the compensating balance issue. In 1979, the district court ruled that the issue was within the scope of the case. It further ruled that the plaintiffs who were subject to the compensating balance requirement should be treated as a fourth subclass, although all of them were also included in all three pre-existing subclasses. After cross motions, summary judgment was granted in favor of two members of subclass IV, Columbia River (Columbia) and Lenrich, and against a third, Willamette Western (Willamette). Columbia and Lenrich appeal the denial of their motions for prejudgment interest (No. 81–3214).

Willamette appeals the summary judgment against it, attacking both the district court's treatment of the two extensions of credit to it as a single loan and the computation of the effective interest rate on that loan (No. 81–3214). First National cross appeals from the summary judgment in favor of Lenrich and Columbia, raising five issues regarding compensating balances (No. 81–3236).

## DISCUSSION

## I

## DENIAL OF PREJUDGMENT INTEREST

The district judge concluded that "the statutory penalty provided by 12 U.S.C. § 86 should not be increased by an award of prejudgment interest". We agree.

██ A district court has discretion to award prejudgment interest on compensatory damages in order to make the injured party whole.[2] *United States v. California State Board of Equalization,* 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.* —— U.S. ——, 102 S.Ct. 2261, 72 L.Ed.2d 864 (1982). *See also Whittaker v. Whittaker Corp.,* 639 F.2d 516, 534 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). Where the recovery is penal, as opposed to compensatory, the availability of prejudgment interest depends upon the purposes of the statute. *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947).

The appellants first argue that the statutory double recovery under the Bank Act is remedial. 12 U.S.C. § 86 provides that:

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest.... In case the greater rate of interest has been paid, [payor] may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid....

Since its enactment over 100 years ago, this section of the Bank Act has been characterized as penal. *See First National Bank of Newton v. Turner,* 3 Kan.App. 352, 42 P. 936 (1895); *McCreary v. First National Bank of Morristown,* 109 Tenn. 128, 70 S.W. 821, 822 (1902); *McCollum v. Hamilton National Bank,* 303 U.S. 245, 247–49, 58 S.Ct. 568, 570–71, 82 L.Ed. 819 (1938); *First*

---

**2.** Broader review may be appropriate here because the denial appears to have been based on a legal ruling that the Bank Act does not support prejudgment interest awards. We need not resolve this issue because we would affirm in this case even under a de novo standard of review.

*National Bank in Mena v. Nowlin,* 509 F.2d 872, 875 (8th Cir. 1975). *But see Farmers' & Mechanics' National Bank v. Dearing,* 91 U.S. 29, 35, 23 L.Ed. 196 (1875).

■ Relying on our dicta in *Riggs v. Government Employees Financial Corp.,* 623 F.2d 68, 70 (9th Cir. 1980), plaintiffs contend that the statute is remedial as to borrowers even if penal as to lenders. The statutory recovery under the Bank Act is twice the total amount of interest paid, not merely double the usurious portion. Subclass III paid $3,372 excess interest over the legal rate. Their recovery, however, was twice the total interest paid—an award of $422,295.68. There was also a large disparity between the overcharges and the recovery by subclass IV members. In light of this large disparity between the overcharges and recoveries, we conclude that the double recovery provision is penal, not compensatory.[3]

■ Prejudgment interest under a primarily penal statute such as the double recovery provision of the Bank Act depends upon whether an interest award would be consistent with the statute's purposes. In *Rodgers* the Supreme Court reversed an award of prejudgment interest upon an award under the double recovery provision of the Agricultural Adjustment Act. It reasoned that it was "unable to say that it would be consistent with the congressional purpose for the courts to add interest to these very substantial penalties already imposed...." 332 U.S. at 376, 68 S.Ct. at 8. The same is true here.

■ Although we understand plaintiffs' argument that the double recovery provision may be compensatory in the sense that recovery beyond actual loss could serve as compensation for the costs and delays inherent in litigation, this does not, in our opinion, necessarily warrant the award of prejudgment interest in addition to the statutory double recovery. *See Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1114 (4th

Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981) (no interest on Age Discrimination in Employment Act award because Congress has compensated for delay via award of statutory double recovery of back wages).

The Bank Act provides for recovery of twice the amount of *total* interest paid if any part of the interest paid is usurious. The purpose of this harsh provision is to deter future usury. *Anderson v. Hershey,* 127 F.2d 884, 887 (6th Cir. 1942). Plaintiffs, like the *Rodgers* dissenters, argue that deterrence will be diluted if interest is disallowed. Although this argument has force, it would support interest on penalties of every type, a result not contemplated in *Rodgers.* In addition, increasing penalties will increase the burden on national banks and hence may be inconsistent with the balance struck by Congress between deterrence and other goals. One of the major purposes of the Bank Act was to encourage formation of national banks by placing them on the same competitive footing as state banks. *See First National Bank v. Dickinson,* 396 U.S. 122, 133, 90 S.Ct. 337, 343, 24 L.Ed.2d 312 (1969); *First National Bank v. Walker Bank & Trust Co.,* 385 U.S. 252, 261, 87 S.Ct. 492, 497, 17 L.Ed.2d 343 (1966); *First National Bank in Mena v. Nowlin,* 509 F.2d at 879–80. We are therefore reluctant to expand upon the remedy provided by Congress. As the Supreme Court said in regard to the Bank Act in *McCollum v. Hamilton National Bank:*

> [T]he law itself fixes the punishment at precisely twice the usurious exaction paid; it may not be enhanced or mitigated because of aggravating circumstances or equitable considerations.

303 U.S. at 247, 58 S.Ct. at 570.

In applying *Rodgers,* courts have given great weight to whether a statute is remedial in nature in determining whether to award prejudgment interest. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1219 (8th Cir.), *cert. denied,* 454 U.S.

---

**3.** Plaintiffs do not contend that the usurious portion of the interest should have been segregated and prejudgment interest awarded solely on that excess portion. Accordingly, we do not address that question.

968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Clinchfield Coal Co. v. Cox,* 611 F.2d 47, 48–49 (4th Cir. 1979); *Payne v. Panama Canal,* 607 F.2d 155, 166 (5th Cir. 1979). They have continued to disfavor interest on penalties, *see United States v. Michael Schiavone & Sons, Inc.,* 450 F.2d 875, 876 (1st Cir. 1971); *Marshall v. Painting by C.D.C., Inc.,* 497 F.Supp. 653, 654 (E.D.N.Y. 1980); *cf. Rayonier Inc. v. Polson,* 400 F.2d 909, 922 (9th Cir. 1968) (applying Washington law), and prejudgment interest on penal awards remains the exception and not the rule. Thus the district court properly refused to add prejudgment interest to the already substantial double recovery under the Bank Act.

## II

### COMPENSATING BALANCES

Subclass IV's usury claims were based on First National's requirement that they maintain compensating deposits equal to a specified percentage of the loan proceeds. They argue that the full amount of each loan was therefore not available and the effective interest rate should be based on the reduced loan proceeds actually available to the borrower.[4] The district court granted summary judgment to Columbia and Lenrich after the undisputed facts showed that they had been required to maintain compensating balances which, if subtracted from the amounts of their loans, made the total interest charged on the reduced loan amounts usurious.

First National raises five issues concerning subclass IV and the compensating balance policy. It argues that (1) the compensating balance issue was untimely raised; (2) subclass IV should have been decertified; (3) a compensating balance may not be used to compute effective interest rates under 12 U.S.C. § 86; (4) usurious intent was not shown; and (5) the total interest charged on different loans during overlapping time periods should be "spread" over

the period of the entire loan or series of loans in computing the effective interest rate.

### A. Procedural Issues

■ 1. Timeliness: Although the compensating balances claim was not expressly spelled out in the original 1970 complaint, the district court did not err in ruling that the issue of usury by compensating balances was adequately presented. The complaint sought recovery for all usurious interest, and is to be liberally construed under the Federal Rules. *See generally Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir. 1974). A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case. *Oglala Sioux Tribe v. Andrus,* 603 F.2d 707, 714 (8th Cir. 1979); *see generally* 2A *Moore's Federal Practice,* ¶ 8.14 at 8–131 to 8–136. Plaintiffs pursued discovery on the compensating balance issue from the beginning of the litigation and much of the delay was due to First National's interlocutory appeal on the 365/360 issue.

■ 2. Creation of Subclass IV: In 1979, the court added subclass IV to the three preexisting subclasses and denied First National's effort to have the subclass decertified. Subclass IV included all class members who had been subject to First National's compensating balance requirement. Because each subclass IV member was a borrower from First National, each was also a member of one of the three pre-existing subclasses.

The creation of subclass IV was within the district court's broad power under Fed. R.Civ.P. 23(d) to adopt procedural innovations to facilitate management of the class action. *See Blackie v. Barrack,* 524 F.2d 891, 907 n.22 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Rule 23(d) confirms the district court's broad discretion to manage a com-

---

4. For example, a loan of $100 with a 10% compensating balance requirement would in effect be a $90 loan. If 9% interest were charged on the full $100 principal, the effective interest rate on the lesser amount actually usable by the borrower would be 10% and, if the legal maximum was 9%, the higher effective rate would be usurious.

plex class action. 7A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1791 at 223–25 (1982); *Manual for Complex Litigation,* § 1.43 at 40 (5th ed. 1982) (supp. to Wright & Miller, *Federal Practice and Procedure; see also Marshall v. Kirkland,* 602 F.2d 1282, 1296 (8th Cir. 1979).

Subclass IV was created solely to expedite resolution of the case by segregating the compensating balance issue which was common to some members of the existing subclasses. Even if the court had not designated the subclass, it would have had to address the same issues in determining the damages of individual members of the larger class who were charged usurious interest by means of compensatory balances. In these circumstances, the subclass was an appropriate procedural innovation under Rule 23(d).[5]

### B. Effective Rate of Interest

12 U.S.C. § 86 penalizes banks · that charge an interest rate higher than that specified by 12 U.S.C. § 85. Section 85 allows a bank to charge interest at the rate allowed by the laws of the state where the bank is located. In *American Timber I,* we held that the Bank Act adopts state usury law insofar as it fixes the rate of interest. 511 F.2d at 983. Whether the compensating balance requirement resulted in usury depends upon whether, as a matter of law, the compensating balance is viewed as reducing the net loan principal and therefore increasing the effective rate of interest charged on the loan. It is unclear whether the determination of the actual effective interest rate on a particular loan is governed by state law, or whether state law fixes only the allowable maximum rate.[6] It is unnecessary in this case to decide whether state or federal law governs the determination of the effective interest rate. There is little Oregon law on any of the compensating balance/effective rate issues, and our conclusions on these issues would be the same under federal law or our interpretations of Oregon law.

A required compensating balance will ordinarily be treated as diminishing the amount of loan proceeds—thus raising the effective interest rate—if the borrower does not have the right to withdraw the compensating balance, or if the deposits are treated by the bank as its own property. In one early Bank Act case, the court held that a 20% compensating balance requirement raised the effective interest rate, saying that it "has not even the merit of being an ingenious device ... [t]he usury is plain and palpable...." *Planters' National Bank v. Wysong & Miles Co.,* 177 N.C. 380, 99 S.E. 199, (1919) *reprinted in* 12 A.L.R. 1412, 1416. *See also* Annot., *Leaving Part of Loan on Deposit with Lender as Usury,* 92 A.L.R.3rd 769 (1979); 45 Am.Jur.2d, *Interest and Usury* § 113. The Eighth Circuit has held that a compensating balance requirement is suspect because the lender stands to make an overall gain on the transaction of more than the legal rate of interest. *McAdoo,* 535 F.2d at 1053 (refusing to disturb the jury's finding of no intent); *see also Grundel v. Bank of Craig,* 515 S.W.2d 177 (Mo.App.1974) (effective interest rate increased when amount of compensating balance never available to the borrowers);

---

5. Because the subclassification was appropriate under Rule 23(d), it is unnecessary to evaluate it under Rule 23(c)(4) for commonality, numerosity, typicality, and adequacy of representation.

6. The parties agreed that federal law governed the compensating balances question and that state law was limited to determination of the allowable numerical rate of interest. Those courts which have considered the effect of a compensating balance requirement under the Bank Act, however, have applied state law as being adopted by reference in § 85. *See McAdoo v. Union National Bank,* 535 F.2d 1050,

1055 (8th Cir. 1976); *Anderson v. Hershey,* 127 F.2d at 887. Further, it has been suggested that the Bank Act's purpose of fostering "competitive equality" between national and state banks is best served by a broad reading of § 85's adoption of state law. *Nowlin,* 509 F.2d at 879. In *American Timber I* we said that state law is adopted only insofar as it fixes the rate of interest. 511 F.2d at 983. Nonetheless, we treated the question of whether the effective annual interest rate under the 365/360 computation method exceeded the legal rate as governed by state law.

*Miller v. First State Bank,* 551 S.W.2d 89, 96 (Tex.Civ.App.1977), *aff'd as modified,* 563 S.W.2d 572 (Tex.1978) (compensating balance requirement usurious when the borrower required by the loan agreement to maintain compensating deposits). *But see Deposit Guaranty National Bank v. Shipp,* 205 So. 101, 105 (La.App.1968) (no usury where compensating balance amounts remained the property of the borrower and were eventually applied to repayment of the loan); *cf. Spanish Village, Ltd. v. American Manufacturing,* 586 S.W.2d 195, 201 (Tex.Civ.App.1979) (true loan principal is the stated amount less initial financing fee). The only reported Oregon case discussing a similar issue characterized the arrangement as usurious on its face, although it also found that usurious intent was lacking. *Prudential Savings & Loan Association v. Stevens,* 144 Or. 298, 23 P.2d 901, 903 (Or.1933). Lenrich and Columbia were required to maintain and actually did maintain compensating balances.[7] The funds which they kept on deposit with First National in those balances were not available for their use and the net amount of funds made available by the loans was reduced. The district court therefore properly computed the effective interest rate on the basis of the reduced loan amounts. Thus the compensating balance requirement raised the effective interest rate on those loans.

### C. Usurious Intent

■ 12 U.S.C. § 86 provides for double recovery of all interest paid when the usurious interest is "knowingly" received. In *American Timber I,* we held that this standard of intent was shown by two facts: the act of charging the excess interest was intentional, and the bank knew its policy would result in payment of more than the legal rate. 511 F.2d at 983.

It is undisputed that the compensating balance policy was intentional. Further, First National stipulated that, if called, its witness Paul Cook would testify that "at all times relevant to this action," he was aware, as a matter of mathematical computation, that requiring a non-interest bearing compensating balance would increase the effective interest rate on a loan.[8]

First National argues that intent was lacking because it did not know that the benefits it received from compensating balances would be considered as part of the effective interest rate. We held in *American Timber I* that knowledge of the usury violation is unnecessary. *Id.* at 983. Knowledge that the benefits received were in excess of the legal rate is sufficient.[9]

### III

### COMPUTATION OF INTEREST: WILLAMETTE

Summary judgment was granted against Willamette, a member of subclass IV, on the ground that the interest charged was not usurious when two loans to it were considered together and the total interest paid was spread over the period of the longer loan. Willamette appeals the aggregation of the allegedly separate loans and the spreading of the interest.

### A. Aggregation

The district court properly granted summary judgment on the issue of aggregation.

---

7. First National did not concede the compensating balance issue. Although it did not argue the issue at the time of the motions for summary judgment, it had previously argued the point unsuccessfully to the district court.

8. Although the stipulation was for the Lenrich action only, the parties also stipulated that the facts as to Columbia were so similar that the outcome of the two summary judgment motions would be the same.

9. The bank also argues that the showing of knowledge of a usurious compensating balance requirement should differ from the showing of knowledge of a 365/360 policy because a compensating balance requirement results in an indirect benefit rather than a direct payment to the bank. A different standard for indirect benefits seems especially inappropriate here, where First National stipulated that its officer knew, "as a matter of mathematical computation", that the compensating balance requirement would result in raising the effective interest rate above the legal rate.

The district judge looked to the substance, not the form, of the loan transactions to determine whether they should be aggregated and treated as a single loan. The focus on substance was consistent with both Oregon law and the general rule. *See, Mohr, Inc. v. Bank of California,* 443 F.Supp. 370, 373 (D.Or.1978), *aff'd mem.,* 622 F.2d 594 (9th Cir. 1980); *see also Bebee v. Grettenberger,* 82 Mich.App. 416, 266 N.W.2d 829 (1978); *Irving Trust Co. v. Smith,* 349 F.Supp. 146 (S.D.N.Y.1972).

Although Willamette pointed out numerous formal differences between its two loans, it did not raise a material issue of fact as to whether the loans were independent in substance. A single term business loan agreement covered both loans. The differences in duration, payment schedules, record keeping and interest rates were adequately explained by the fact that the loans were funded from two separate sources. Most importantly, Willamette alleged no facts controverting First National's showing that the usurious Eurodollar loan would not have been made in the absence of the accompanying term business loan. The purpose of aggregation analysis is not only to prevent the lender from arranging to receive usury, but also to prevent a borrower from using the usury law as a sword against the lender when in substance he has received only one loan. *See Mohr,* 443 F.Supp. at 374. In light of this purpose, the failure to allege facts showing that the Eurodollar "loan", the only one which was allegedly usurious, would have been made independently of the related term business loan was sufficient reason to aggregate the two for purposes of the usury laws.[10]

## B. *Spreading*

The district court "spread" the interest paid by Willamette over the period of the longer loan. Because the two loans were not independent in substance, spreading the interest across the two loans was appropriate.[11] *See Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 785 (Tex. 1977); *Smart v. Tower Land and Investment Co.,* 582 S.W.2d 543, 545 (Tex.Civ.App. 1979). Willamette has further argued that the interest must be evaluated for usury at the time of each payment, not averaged over the whole loan period.[12] Willamette is correct that spreading the interest over the full term of the loan means that the existence of usury may not be determinable until the end of the loan period; however, this may simply be the nature of a variable rate loan. *See O'Brien v. Shearson Hayden Stone, Inc.,* 90 Wash.2d 680, 586 P.2d 830, 836 (1978), *on reconsideration* 93 Wash.2d 51, 605 P.2d 779 (1980). A contrary rule, unless accompanied by a good faith defense such as California has grafted on its no-spreading rule, could undermine the practicality of the variable-rate device. *Id.,* 586 P.2d at 836; *see also McConnell,* 146 Cal. Rptr. at 378, 578 P.2d at 1382. Spreading the interest over the whole period of the loan rather than computing the effective rate separately for each installment payment also avoids employing the harsh penalties of the Bank Act in a marginal case. In light of the penal nature of the Act and the general rule that a finding of usury is not favored, we decline to disturb the district court's use of spreading in calculating

---

**10.** The aggregation issue is not whether there were two contracts but whether the two loans, even if formally separate, were so related that they should be viewed as one for usury purposes. Willamette failed to controvert First National's affidavits showing that the loans were not independent in substance. Therefore, summary judgment for First National was proper.

**11.** Although the district court spread the total interest paid over the five year period of the longer loan, it was conceded at argument that the interest would have been nonusurious even

if spread over only the shorter two year period when both loans were ongoing.

**12.** Although California measures variable interest at the time of payment rather than as spread over the entire contract, *McConnell v. Merrill Lynch, Pierce, Fenner & Smith,* 12 Cal.3d 365, 146 Cal.Rptr. 371, 377–79, 578 P.2d 1375, 1381–83 (1978), it has qualified the rule with a good faith defense so that the variable rate may exceed the legal rate at a given time if the purpose of the variable rate is not merely to avoid the usury laws.

the effective interest rate on Willamette's loan. *See Tiffany v. National Bank of Missouri,* 18 Wall. 409, 410, 85 U.S. 409, 410, 21 L.Ed. 862 (1873) ("The defendant is not to be subjected to [the Bank Act] penalty unless the words of the statute plainly impose it"). *Cf. Coast Finance Corp. v. IRA F. Powers Furniture Co.,* 105 Or. 339, 209 P. 614, 615 (1922) (clear and cogent proof of usury required); *Crisman v. Corbin,* 169 Or. 332, 128 P.2d 959, 962 (1942) (Oregon usury statute should be strictly construed).

## IV

### COMPUTATION OF INTEREST: LENRICH AND COLUMBIA

 There were a number of separate loans to Lenrich and Columbia, and First National sought to have the district court compute the effective interest rate by "spreading" the total interest paid on all the loans across the various separate loans. The district court refused to spread the interest across the separate loans to Columbia and Lenrich. It carefully examined cases from other states and concluded that each loan should be considered independently because there was neither an agreement covering all the notes, nor any promise for future loans at the time of the first loan. Also, each loan to Columbia and to Lenrich had a separate interest charge, principal, and compensating balance requirement. The Bank had made a single credit report on Columbia to cover future commitments of $987,000, but a separate credit report preceded each actual advance of funds. The affidavits on the motion for summary judgment as to Lenrich did not show an overall advance commitment of funds, although they did show that the various loans were recorded by the bank on a single account card.

Interest spreading has been approved where there is a series of transactions based on a single loan agreement. *Mayfield v. Oklahoma State Bank,* 460 P.2d 414 (Okl. 1969) (oral agreement). In *Mohr,* 443 F.Supp. 370, the amounts of loans made pursuant to a single line of credit were aggregated. First National argues that *Mohr* means that a non-binding, oral agreement for future loans is a sufficient reason to spread interest payments over the period of all the loans in a series. Even if this were the law, however, the district court found that there was no agreement for future loans, and the affidavits on summary judgment do not allege facts showing an agreement of any type. They only indicate that a series of loans and renewals were in fact made.

Thus, we decline to disturb the district court's refusal to spread interest over the series of separate loans to Columbia and Lenrich. There was no agreement governing all the loans, and the fact of the multiple transactions alone did not show a sufficient agreement or "understanding" to require spreading.

### CONCLUSION

The district court properly refused to add prejudgment interest to the double recovery of total interest paid that was awarded to plaintiffs in subclasses III and IV.

The compensating balance issue was timely raised and the district court did not abuse its discretion in refusing to decertify subclass IV. Treatment of compensating balances as part of the effective interest rate was proper, and the ruling on intent was consistent with the standards set forth in *American Timber I.* The court correctly determined that Willamette alleged no facts showing that its two loans were separate in substance. Because the loans were not usurious when aggregated, the summary judgment against Willamette was proper. The refusal to spread interest over the separate loans to Lenrich and to Columbia was proper because there was no evidence of an agreement covering either group of loans.

AFFIRMED.