In re UNITED ENERGY CORPORATION SOLAR POWER MODULES TAX SHELTER INVESTMENTS SECURITIES LITIGATION.

Thomas R. LEONARD; Chambers, Hoffman & Chambers, a Partnership; Gary L. Chambers; David M. Hoffman; George E. Chambers; and Chester and Lyndel Monroe, on behalf of themselves and of all others similarly situated, Plaintiffs,

v.

Charles B. BAUMER; Pachter, Gold & Schaffer, a Professional Corporation; Kenneth M. Christison; Christison & Hudgens; Montie S. Day and Day & McBride, Defendants.

Nos. MDL 726.
CV 87–3962 KN (Gx).

United States District Court,
C.D. California.

June 24, 1988.

Lieff, Cabraser & Heimann, Robert L. Lieff, Elizabeth Joan Cabraser, Richard M. Heimann, San Francisco, Cal., Law Offices of Ann Rankin, Ann Rankin, Oakland, Cal., for plaintiffs.

Paul, Hastings, Janofsky & Walker, John H. Brinsley, Claudia A. Carver, Nicholas DeWitt, Los Angeles, Cal., Day Law Corp., Montie S. Day, Jon R. Vaught, Oakland, Cal., for defendants.

### ORDER Re Motion for Class Certification

KENYON, District Judge.

The Court, having received and considered Plaintiffs' Motion for Class Certification and the papers filed in support thereof and in opposition thereto, and having heard the arguments of counsel on March 28, 1988, HEREBY GRANTS Plaintiffs' motion. The Court finds that Plaintiffs have met all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The class certified consists of:

> all persons or entities who invested in UEC tax-sheltered investments in the form of purchases of 'solar power modules' from or about December 1981, through or about the summer of 1985 (the class period), and who have lost all or part of their original principal investments and any note payments, promised interest and profits thereon, promised tax benefits therefrom, and/or who have

incurred associated general and incidental damages. Notwithstanding any such solar power module investments they may have made, the proposed Plaintiff "Solar Power Module Investor Class" does not include the Defendants, the members of their immediate families, any entity in which any of the Defendants have a controlling interest, or the legal representatives, heirs, successors or assigns of any of the Defendants, all of whom are expressly excluded from membership in the proposed Plaintiff Class.

Plaintiffs sought to certify the above-described class pursuant to Federal Rule of Civil Procedure 23(b)(3); however, they reserved the right to ask for mandatory certification pursuant to Rule 23(b)(1) at a subsequent date, if it later becomes apparent that the available assets and insurance of the defendants constitute a "limited fund" which would justify certification under that subsection.

Rule 23(a) enumerates the four basic prerequisites which must be established before any action may be maintained as a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. F.R.Civ.P. 23(a).

In addition to satisfying these four requirements, two additional requirements must be met to certify a class pursuant to Rule 23(b)(3): (5) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (6) a class action is superior to other means of adjudicating the controversy.

 In a securities case, the requirements of Rule 23 should be liberally construed in favor of class actions. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3rd Cir.), *cert. denied sub nom Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). However, the burden is on the plaintiffs to show that class certification is proper under Rule 23. *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308

(9th Cir.1977); *Schwartz v. Harp,* 108 F.R.D. 279, 281 (C.D.Cal.1985).

### A. Numerosity

Plaintiffs allege the existence of approximately 4000 potential class members. Although joinder is theoretically possible since the potential class members are presently known and identifiable, a class of this size is so numerous as to make individual joinder extremely impracticable. The logistics of dealing with such an action can easily be imagined. *See, e.g., Schwartz v. Harp,* 108 F.R.D. at 281–82. Defendants Pachter, Gold and Schaffer and Charles B. Baumer (collectively "PG & S") do not controvert Plaintiffs' assertion that the numerosity requirement is satisfied.

Defendants Day & McBride and Montie Day (collectively "D & M"), however, do object to a finding of numerosity as applied to them. These defendants authored a letter to investors indicating that the IRS investigation of United Energy Corporation ("UEC") was groundless. D & M state that any class certified against them should include only those plaintiffs who were induced to make payments on their notes in 1985, a subclass of the entire plaintiff group.

 A subclass generally must independently meet all Rule 23(a) requirements. *Roby v. St. Louis Southwestern Railway,* 775 F.2d 959, 961 (8th Cir.1985); *Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th Cir.1981). However, a smaller subclass is appropriate where the subclass is created by the court for increased manageability, and where there is no antagonism between members of the subclass and members of the class at large. *American Timber & Trading Co. v. First National Bank,* No. 70-687-SK (D.Or. 1979), *aff'd,* 690 F.2d 781, 786–87 (9th Cir. 1982). In this case, the members of the subclass of investors allegedly induced by the D & M representations are not antagonistic to the members of the class as a whole. Additionally, according to Plaintiffs' calculations, this subclass alone contains approximately 300 members. This is

sufficiently numerous to satisfy the requirements of Rule 23.

### B. *Commonality and Predominance*

These two prerequisites may properly be treated together, as the standard of predominance under Rule 23(b)(3) is more stringent than the commonality requirement applicable to all class actions generally. *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y.1977). A finding that common questions predominate under 23(b)(3) necessarily implies that such questions exist, satisfying the commonality requirement.

The complaint alleges common conduct, standardized documents, and common misrepresentations. Plaintiffs claim that these common issues, including the truth or falsity of representations made, the materiality of representations and omissions, the existence and effects of other influences, and Defendants' knowledge or lack thereof, predominate over issues such as reliance, causation and damages. Defendants, on the other hand, focus on the individual questions and issues.

Various courts have held that where members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct, common questions exist and a class action is appropriate. *In re Diasonics Securities Litigation*, 599 F.Supp. 447, 451 (N.D.Cal.1984) (hereinafter *"Diasonics"*); *Beebe v. Pacific Realty Trust*, 99 F.R.D. 60, 65 (D.Or.1983); *Pistoll v. Lynch*, 96 F.R.D. 22, 28 (D.Haw. 1982), and cases cited therein; *Clark v. Cameron–Brown Co.*, 72 F.R.D. 48, 59 (M.D.N.C.1976). This is particularly true where, as here, the claims are primarily grounded on misrepresentations and omissions contained in a common core of documents. *In re Home–Stake Production Co. Securities Litigation*, 76 F.R.D. 351, 369 at n. 11 (N.D.Okl.1977).

■ Although the amount of damages suffered is generally an individual matter, this issue should not preclude a finding of predominance. *Blackie v. Barrack*, 524 F.2d at 905. *Rules Advisory Committee Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69 (1966). Furthermore, in this action, the amount of damages should be fairly simple to determine, so that calculations thereof should not completely overshadow other issues. The focus of the predominance question should be, therefore, liability.

### 1. Reliance

■ Defendants' primary argument against certification is that questions of reliance predominate. They argue that, in cases involving misrepresentations under federal securities laws, individual investor reliance must be shown. They claim that there are two exceptions to this rule, neither of which applies to the instant action.

Defendants argue that the so-called "fraud-on-the-market" exception is inapplicable in this action because the securities in question were not traded on the open market. Under the fraud-on-the-market theory, proof of reliance is unnecessary because the plaintiff is considered to have relied on the integrity of the market price of the security. *Blackie v. Barrack*, 524 F.2d at 907; 4 *Newberg on Class Actions 2d* (1985), Section 22.49 at 100–101. In this action, Defendants assert, no such "market" exists.

Defendants' second exception to the reliance requirement derives from *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), in which the Supreme Court held that in cases "involving primarily a failure to disclose," proof of reliance is not required. Proof of reliance is not required because, where an omission is alleged, it would be difficult, if not impossible, to prove how the investor would have acted had the material information been disclosed. In a pure omission case, all that is required is a showing of materiality, which does not depend on the circumstances and beliefs of the individual investors. Defendants argue that *Affiliated Ute* and cases which have followed it, such as *Blackie v. Barrack, supra,* do not apply to the instant case which involves misrepresentations rather than omissions. However, this argument is based in part upon a misreading

of the complaint. The complaint alleges both misrepresentations *and* material omissions.

The necessity of proving reliance becomes a more complicated question in cases such as this, where both misrepresentations and omissions are involved. As has often recognized, distinctions between the two often elevate form over substance. *Little v. First California Co.,* 532 F.2d 1302, 1304 n. 4 (9th Cir.1976); *Weinberger v. Jackson,* 102 F.R.D. 839, 846 (N.D.Cal. 1984). However, it is not necessary to resolve this question at the present time. First of all, to do so would be an unwarranted intrusion into the merits of the claims and defenses. *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 139–140 (D.N.J.1984) (hereinafter *"Data Access"*). Furthermore, such a determination might be wasteful. At this point, we cannot know whether the misrepresentation or omission claims will ultimately prevail. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 547 (E.D.Pa.1976), *aff'd in part, rev'd in part on other grounds,* 649 F.2d 175 (3rd Cir.1981).

More importantly, however, whether or not reliance is a necessary element in a case involving misrepresentations and omissions is not a question that *needs* to be decided on this motion for class certification. If it is later determined that reliance is a necessary element, separate hearings could be held or the trial bifurcated to deal with this issue. *Sharp,* 70 F.R.D. at 547. *See also, Green v. Wolf Corp.,* 406 F.2d 291, 301 (2nd Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The policies served by the securities laws would be in part eviscerated if the reliance requirement precluded class certification. *Sharp,* 70 F.R.D. at 547; *Data Access,* 103 F.R.D. at 139–40. *See also Eisenberg v. Gagnon,* 766 F.2d at 786, in which the Third Circuit stated that the presence of individual questions as to the reliance of each investor does not mean that the common questions do not predominate.

Furthermore, the determination of whether each member of the class must prove reliance is itself a common question. *Sharp,* 70 F.R.D. at 548; *Data Access,* 103 F.R.D. at 140. To the extent that Defendants will raise non-reliance as a defense, this is also a question which goes to the merits and cannot be considered at this point. *Id.* at 139. If necessary, subclasses can be formed at a later date. *Diasonics,* 599 F.Supp. at 452, n. 3.

## 2. Effect of Oral Representations

Defendants argue that certification is improper because of representations made to plaintiffs by brokers and others. Defendants argue that these representations turn this case into one for oral misrepresentations, for which class certification should not readily be available. However, this argument misreads Plaintiffs' complaint, which focuses solely on disclosures in and omissions from the standardized letters issued.

Any intervening oral representations may impact somewhat on the reliance issue, if that issue becomes crucial at trial. As the *Data Access* court recognized, various types of reliance are present in almost all securities cases. A class action of purchasers could never be maintained if these differences (reliance on friends, brokers, etc.) were permitted to defeat class certification. 103 F.R.D. at 139.

## 3. RICO Claims

Similarly, although there may be individual issues involved in Plaintiffs' civil RICO claims, such as injury and damages, significant common issues are presented. The issues of law and fact in making out a RICO violation will generally be common to all Plaintiffs' claims, because Plaintiffs are asserting a single fraudulent scheme by the defendants which injured each plaintiff. *McMahon Books, Inc. v. Willow Grove Associates,* 108 F.R.D. 32, 38–39 (E.D.Pa. 1985). Common issues include establishing the "enterprise" and "pattern of racketeering" requirements. While individual injury must be proved for recovery under civil RICO, common issues predominate. If the common elements are not established, no individual questions will ever arise. Addi-

tionally, much of the evidence which will be introduced to establish the RICO violation is the same as that which will be introduced on the federal securities claims.

#### 4. State Claims

As with the RICO claims, much of the same evidence will be used to establish the elements of Plaintiffs' securities and state law claims. Additionally, the state claims allege a common course of conduct by defendants, whether it is professional malpractice or fraud. In the malpractice and negligence claims, common questions such as duty, knowledge, and breach will predominate over the individual issues of injury and damages.

■ Plaintiffs' fraud claims are more problematic. They are predicated upon precisely the same conduct (material misrepresentations and omissions) that underlie the federal securities claims. *In re Victor Technologies Securities Litigation,* 102 F.R.D. 53 (N.D.Cal.1984), *aff'd,* 792 F.2d 862 (9th Cir.1986). However, defendants argue that reliance must be shown in state fraud claims, making them inappropriate for resolution on a class basis. *Hudson v. Capitol Management International, Inc.,* 565 F.Supp. 615 (N.D.Cal.1983); *but see Vasquez v. Superior Court,* 4 Cal. 3d 800, 914, 94 Cal.Rptr. 796, 484 P.2d 964 (1971) (*en banc*), in which the court held that "if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." Whether reliance must be shown is itself a common question.

As with the federal securities and RICO claims, the Court believes that the best approach is to certify the class at this time. While individual questions may exist, those questions may never have to be reached if the common elements are not first established. The Court retains a variety of procedural devices for handling individual questions at a later date.

#### 5. Conclusion re: Predominance

Common questions, such as the knowledge of the Defendants, the truth or falsity of their representations, the materiality of representations or omissions, whether they acted negligently or recklessly, and whether they breached any professional duties owed to plaintiffs, predominate. Questions such as reliance, sophistication, and damages, although their resolution may become necessary at some point, are properly dealt with at such time through a variety of procedural devices such as subclassification, bifurcation, and reconsideration of class certification. *Schwartz v. Harp,* 108 F.R.D. at 282.

#### C. *Typicality*

■ A plaintiff's claim is typical of the claims of the proposed class members if it is aligned with the claims of other class members. The plaintiff's claim must arise from the same event or course of conduct giving rise to the claims of other class members. Furthermore, the claims must be based on the same legal theory. *In re Unioil Securities Litigation,* 107 F.R.D. 615, 620 (C.D.Cal.1985) (hereinafter *"Unioil"*). The theory behind this prerequisite is that a plaintiff with typical claims will pursue her own self-interest and advance the interests of class members accordingly. 1 *Newberg on Class Actions 2d,* Section 3.13, at 166–67. In this action, the course of conduct which underlies the allegations of the complaint includes standardized misrepresentations and omissions in the various letters prepared by the defendants. *See Eisenberg v. Gagnon,* 766 F.2d at 786–87; *Sharp,* 70 F.R.D. at 548. Any factual differences do not defeat certification in securities actions where the claims arise from the same legal theory. *Schwartz v. Harp,* 108 F.R.D. at 282.

■ For the reasons given above, Defendants' argument, that typicality has not been established because reliance has not been shown, is unpersuasive. The fact that only some members of the class may have relied on the letters prepared by Defendants is not sufficient reason for finding that the named Plaintiffs' claims are not typical. *Eisenberg v. Gagnon,* 766 F.2d at 786; *Kennedy v. Tallant,* 710 F.2d 711, 717 (11th Cir.1983).

■ Similarly, Defendants' argument that varying investment dates preclude a finding of typicality is unpersuasive. Where standardized misrepresentations and omissions are alleged and where these misrepresentations do not vary substantially over time, a class extending over time is appropriate. 4 *Newberg on Class Actions 2d* (1985), Section 22.13 at 34, citing *Green v. Wolf Corp., supra.*

Individuals who purchased solar modules prior to October 11, 1982, the date of PG & S' first tax opinion letter, are properly dealt with as a sub-class. It is inappropriate at this time to address Defendants' arguments that the complaint does not state a claim with respect to these individuals. The withdrawal of Adrian Mandel, the only named plaintiff who invested before October 1982, does not preclude including these purchasers in the class, as the representations made over the course of the UEC investments were similar or identical. The later purchasers' interests will adequately represent those of the earlier purchasers.

Similarly, San Diego Solar Concepts, which purchased a large number of modules relying upon the opinion letters of its own counsel, can properly form a subclass.

## D. *Adequacy of Representation*

■ The "adequacy of representation" requirement of Rule 23 is comprised of two factors: 1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and 2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class. *See, e.g., Unioil,* 107 F.R.D. at 621–22. In some courts, the burden is placed on the defendants to prove the inadequacy of representation. *See, e.g., Data Access,* 103 F.R.D. at 140.

The declarations of the Plaintiffs' attorneys indicate that they have substantial experience in complex litigation in areas of both state and federal law. Defendants focus on the ethics of Plaintiffs' counsel, and upon the extent of the class representatives' understanding of the factual and legal issues underlying the complaint.

### 1. Ethical issues

#### a. *The Fee Agreement*

■ The Court does not believe that the fee agreement entered into between Plaintiffs and their attorneys is unethical or creates a conflict of interest. The fee agreement is a basic contingency agreement, which provides that the attorneys are not entitled to reimbursement for costs or attorneys' fees unless there is a monetary recovery. Defendants argue that a conflict of interest is created where the client does not remain ultimately liable for costs. However, although ABA Disciplinary Rule 5–103(B) prohibits an attorney from advancing costs unless the client remains ultimately liable, the analagous California rule contains no such limitation. Some authorities have interpreted the California rule as allowing agreements such as that involved here. *In re Mid–Atlantic Toyota Antitrust Litigation,* 93 F.R.D. 485, 490 at n. 7 (D.Md.1982), *aff'd sub nom Pennsylvania v. Mid–Atlantic Toyota Distributors,* 704 F.2d 125 (4th Cir.1983); Bar Association of San Francisco Ethics Opinions of the Legal Ethics Committee, Opinion 1985–2. Furthermore, the ABA's proposed Model Rule of Professional Conduct 1.8(e)(2) provides that the recovery of costs advanced may be contingent on the outcome of the litigation.

#### b. *False Statements by Plaintiffs*

■ Defendants also question the integrity of the attorneys and several of the named Plaintiffs because of allegedly false statements included in those Plaintiffs' declarations. However, while apparently inaccurate statements appeared in several declarations, Plaintiffs' counsel quickly moved to cure any defects. The Court does not believe that these inaccuracies indicate unethical behavior on the part of Plaintiffs or their counsel.

### 2. *Adequacy in General*

■ In determining adequacy, the court must scrutinize the ability of the named representatives to represent the interests of the class fairly and adequately. *Diasonics,* 599 F.Supp. at 452. Defendants

argue that some Plaintiffs are too ill-informed or uninterested to serve as adequate representatives. However, in a class action, it cannot be expected that all class members will be interested to the same degree. In *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726–27 (11th Cir.1987), the court recognized that the vigor in pursuing class claims often comes from the attorneys, rather than the litigants themselves. However, the the class device serves other important public and private interests. As stated in *Kirkpatrick:*

> In securities cases such as these where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case. To require less would permit attorneys essentially to serve as class representatives; to require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights.

*Id.* at 728.

Plaintiffs have adequately shown that at least some of the named Plaintiffs have expressed an understanding and interest in the proceedings. Plaintiffs have further shown that others, although not involving themselves in the day-to-day proceedings, have produced numerous documents, participated in many depositions, and evinced an understanding that recovery is for the class as a whole, while they alone might be subject to the costs of litigation.

E. *Superiority of Class Device*

 The Court believes that the class device is superior to any other method of adjudicating the claims involved herein. The reasons for this conclusion have been set forth above. The amounts invested by purchasers of the solar modules were relatively small. Individual litigation would not be feasible for many of them, especially given the greater resources of the attorneys herein. Many of the legal and factual issues to be determined are common to all plaintiffs. Numerous determinations could result in varying adjudications of liability.

For the foregoing reasons, the Court believes that certification of the class proposed by Plaintiffs is appropriate. As indicated, however, the Court believes that at least three sub-classes are necessary. The Court requests that Plaintiffs define the appropriate sub-classes and submit their definitions to the Court for review within two weeks of the date of this Order.

IT IS SO ORDERED.