DECISION
Before this Court is Plaintiffs Heritage Healthcare Services, Inc. (Heritage), Vito's Express Inc. (Vito's), Swimming Pool Specialist, Inc. (Pool Specialist), J. Broomfield Sons Co., Inc. (Broomfield), Sterling Investigative Services, Inc. (Sterling), and Leonelli and Vicario, Ltd.'s (collectively, Named Plaintiffs) motion to certify a class pursuant to Super. R. Civ. P. 23 and designate the Named Plaintiffs as the class representatives and the objection thereto of Defendants The Beacon Mutual Insurance Company (Beacon), Joseph Arthur Solomon, Michael Dennis Lynch, and John Does 1-100 (collectively, Defendants). *Page 2 
 I Facts and Travel
The facts and travel of this case have been well-documented in several prior written decisions of this Court and our Supreme Court.[1]
Therefore, the Court will not repeat the facts and travel of this case. Here, the Named Plaintiffs are moving for class certification pursuant to Super. R. Civ. P. 23 and for their designation as the class representatives. The Named Plaintiffs seek certification of a class of
 "[a]ll Beacon policyholders who held a Beacon Workers Compensation Employers Liability Policy (the `Policy') during the period from September 26, 2001 to March 22, 2006 and did not receive a consent-to-rate discount during that time (the `Revised Class' or the `Class'). The Class excludes any Beacon policyholder that received a consent-to-rate discount from September 26, 2001 to March 22, 2006, Defendants, Defendants' subsidiaries, affiliates and this Court. Named Plaintiffs Heritage Health Care Services, Inc., Vito's Express, Inc., Swimming Pool Specialists, Inc., J. Broomfield Sons Co., Inc., Sterling Investigative Services, Inc., and Leonelli and Vicario, Ltd. are the Class representatives." (Ninth Amended Complaint ¶ 34.)
 II Discussion *Page 3 
"A class action is a procedural vehicle that serves the interests of judicial economy by permitting a representative with claims or defenses that are typical of the group to represent a class of similarly situated individuals who are too numerous to practicably join in the litigation."DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 486 (R.I. 2004) (citing Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1262
(R.I. 2003). In Rhode Island, class actions are governed by Rule 23 of the Superior Court Rules of Civil Procedure.[2] To attain class certification, a plaintiff or group of plaintiffs must satisfy the requirements set forth in subsections (a) and (b) of Rule 23. DeCesare,852 A.2d at 486. A party seeking certification of a proposed class bears the burden of establishing that the class meets the elements set forth in Rule 23(a), and qualifies in one of the three categories described in Rule 23(b). Id. Subsection (b) is only implicated after all four prerequisites of subsection (a) have been satisfied. Id.
"`In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"[3] Eisen v. Carlisle Jacquelin, 417 U.S. 156, 178,94 S. Ct. 2140, 2153 (1974) *Page 4 
(quoting Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971)). Our Supreme Court has stated that while the "initial burden is not heavy," plaintiffs seeking class certification bear the burden of proving that Rule 23's requirements have been met by "more than mere conjecture and conclusory allegations." Cabana v. Littler, 612 A.2d 678,686 (R.I. 1992). Indeed, the United States Supreme Court has admonished trial courts to conduct a "rigorous analysis" of the prerequisites to a class action before a class may be certified under Rule 23. DeCesare,852 A.2d at 487 (citing General Tel. Co. of the Southwest v. Falcon,457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). Generally, however, a court contemplating class certification should err in favor of granting class certification early in the litigation[4] because (1) it alerts all parties that the matter will be litigated as a class action, and (2) the decision is not final since the court retains "power to subdivide, modify or decertify the class at any time prior to judgment." Cabana,612 A.2d at 686.
 A Rule 23(a)
The first step in class certification is to examine whether the proposed class meets the requirements set forth in Rule 23(a). Zarrella,824 A.2d at 1263-64. Rule 23(a) states that class certification is appropriate when: *Page 5 
 "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Super. R. Civ. P. 23(a).
 1 The Class is so Numerous that Joinder of all Members is Impracticable
Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." DeCesare, 852 A.2d at 484. However, Rule 23 does not require that joinder be impossible but merely impracticable. 7A Wright Miller, Federal Practice Procedure, Civil 2d § 1762, at 159 (1986). Whether or not a proposed class is so numerous that joinder of all class members would be impracticable should be evaluated on a case-by-case basis where a number of factors may be considered. See Cohenv. Harrington, 722 A.2d 1191, 1196 (R.I. 1999). Indeed, courts should not rely on the size of a class as the lone guideline for determining practicability of joinder. See Dale Elecs., Inc. v. R.C.L. Elecs., Inc.,53 F.R.D. 531, 534 (D.N.H. 1971).
While the Court need not address numerosity as Defendants concede that joinder would not be practicable, the issue of practicability raises two additional questions. The first question is whether each proposed class member has the financial resources to pursue his or her claim on an individual basis. See Committee of Blind Vendors v. District of Columbia,695 F. Supp. 1234, 1242 (D.D.C. 1988). The second issue is whether the relief sought by an individual class member is substantial enough on its own to merit the efforts of litigation. See Eisen, 417 U.S. at 161,94 S. Ct. at 2144 (stating that where petitioner's individual stake in the damages award was only $70, no attorney would undertake to recover such an inconsequential amount, and therefore, "[e]conomic reality dictate[d] that petitioner's suit proceed as a class action or not at all"). *Page 6 
Class certification is a tool available to the Court to encourage judicial economy by allowing one representative with similar claims to sue on behalf of a group of similarly situated people that is too large to practicably join in the litigation. See Super. R. Civ. P. 23; 1 H. Newberg A. Conte, Newberg on Class Actions, § 1.01 (4th ed. 2002). More importantly, class actions provide motivation for individuals to pursue claims that they may not otherwise pursue because individual recovery would be too small to warrant litigation. See Phillips Petroleumv. Shutts, 472 U.S. 797, 809, 105 S. Ct. 2965, 2973 (1985).
In this case, if each individual policyholder brought his or her own suit against the Defendants, the potential monetary recovery would represent the dividend (or discounted premium) each policyholder would have received if Beacon had equitably distributed the $101 million alleged to have been inappropriately distributed to Select Policyholders through consent-to-rate discounts in 2002-2005. The monetary value of this recovery, however, would be minimal.[5] Consequently, because it is unlikely that each individual Class member would recover enough in a similar individual action to warrant the costs of litigation, it follows that each proposed Class member does not have the financial resources to pursue such nominal claims. Nevertheless, were the proposed Class members' claims to be aggregated[6] as a class action, it is likely that the costs of litigation would be allayed and the recovery, if awarded, would be substantial enough to justify the effort and expense of litigation. As a result, the Court finds that the proposed Class satisfies the requirements of Rule 23(a)(1). *Page 7 
 2 There are Questions of Fact and Law Common to all Class Members
Class certification is appropriate where "there are questions of law and fact common" to all proposed class members. See Super. R. Civ. P. 23(a)(2); DeCesare, 852 A.2d at 487. The "threshold of commonality is not high." Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986). Under Rule 23(a)(2), commonality requires that "questions of law or fact common to the class exist" and the representative plaintiff's claims share at least one question of fact or law with the claims of the prospective class. See Caranci v. Blue Cross Blue Shield, 1999 WL 766974, at *12 (D.R.I. Aug. 19, 1999) (stating "Rule 23(a)(2) does not require that the common questions of law or fact predominate over the questions affecting individual members. Instead, it requires merely that questions of law or fact common to the class exist."). This is not an exacting standard as complete identity or predominance of claims is not required for class certification. Id.; see also 1 H. Newberg A. Conte, Newbergon Class Actions, § 3:10, at 272-74 (4th ed. 2002) (stating that the test for meeting the Rule 23(a)(2) prerequisite "is qualitative rather than quantitative — that is, there need be only a single issue common to all members of the class").
It is well settled that commonality can arise when every member of a purported class receives a document which becomes the main issue of litigation. See Bertozzi v. King Louie Int'l, Inc., 420 F. Supp. 1166,1176 (D.R.I. 1976). Indeed, our Supreme Court has affirmed that commonality exists where all the proposed class members "`purchased substantially identical policies, agreed to the same contract terms . . . were all allegedly harmed by [defendant's] actions . . .,' and their claims turned on the same legal principles." DeCesare, 852 A.2d at 486-87. Certainly, where, as here, each proposed Class member is subject to a document — the *Page 8 
worker's compensation policy — which is now a focus of the litigation, and each Class member's claim turns on the same legal principles, the Court would be remiss to deny the existence of commonality. See Bertozzi420 F. Supp. at 1176 (finding common questions of law and fact sufficient for commonality where the focus of plaintiffs' entire action was a single written document).
Moreover, commonality may be met, where, as here, the claims of every proposed Class member are based on a common legal theory, even though the factual circumstances differ for each member. See Caranci, 1999 WL 766974, at *12 (stating that although individual differences could arise in the present suit, the requirements of Rule 23(a)(2) are met when "a common course of conduct gives rise to common questions"); see also Joseph v.General Motors Corp., 109 F.R.D. 635, 640 (D. Colo. 1986); Milonas v.Williams, 691 F.2d 931, 938 (10th Cir. 1982), cert. denied, 460 U.S. 1069,103 S. Ct. 1524 (1983) (stating that "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist"). "`[T]o require complete identity would unduly confine class actions to the narrowest circumstances.'"Caranci, 1999 WL 766974, at *12 (quoting United States v. Rhode IslandDep't of Emp't Sec., 619 F. Supp. 509, 513 (D.R.I. 1985)).
Despite the Defendants' best efforts to skew the issues, the Court finds that the questions of law at the core of Plaintiffs' complaint do not relate to the Defendants' failure to award consent-to-rate discounts to the proposed Class, but rather, relate to the Defendants' failure to equitably distribute dividends amongst the policyholders.[7] The crux of the Plaintiffs' complaint is that: (1) Beacon, under its statutory authority, can issue dividends to policyholders when assets *Page 9 
exceed liabilities and the minimum surplus requirements are met; (2) such dividends must be distributed equitably to all policyholders through discounts on annual premiums; (3) Beacon owes them a fiduciary duty because the policyholders, by virtue of owning a Beacon policy, are owners of Beacon; and (4) the Defendants engaged in a systematic scheme to divert over $101 million to a small percent of its policyholders — through consent-to-rate discounts — rather than distributing it equitably to all its policyholders.
In light of these allegations, Plaintiffs have identified the following questions common to all proposed Class members:
 "(1) Whether Defendants engaged in a scheme that unfairly distributed profits to Select Policyholders and/or underpaid dividends and/or charged excessive premiums to the Class; (2) Whether Defendants breached their fiduciary duty to policyholders; (3) Whether Beacon's misconduct proximately caused damage to its policyholders, and the amount of such damage; and (4) Whether Plaintiffs are entitled to punitive damages." See Pls.' Revised. Mot. for Class Certification 13; Ninth Amended Complaint ¶ 37.
Therefore, because the Court will be called upon to apply the same legal principles to resolve claims arising from a common set of facts, and there are common questions which must be answered with respect to all proposed Class members, the Court finds that commonality is satisfied in this case.
 3 The Claims of the Named Plaintiffs are Typical of the Proposed Class
Under Rule 23(a)(3) the claims or defenses of the named plaintiffs in a class action must be typical of the claims and defenses of the class. Super. R. Civ. P. 23(a)(3); see also In re United Energy Corp.,122 F.R.D. 251, 256 (C.D. Cal. 1988). "Typicality refers to the nature of the claim or defense of the class representative and not to the specific facts from which it arose *Page 10 
or to the relief sought." 1 H. Newberg A. Conte, Newberg on ClassActions, § 3:13, at 326 (4th ed. 2002). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiffs and the conduct affecting the class, so that a court may properly attribute a collective nature to the challenged conduct. Id. at 327; seealso 7A Wright Miller, Federal Practice Procedure, Civil 2d § 1764, at 232-33 (1986) (stating that "Rule 23(a)(3) assures that the claims of the representative party are similar enough to the claims of the class so that he will adequately represent them").
"The test of typicality is `whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497,508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985); see also Berenson v. Faneuil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984) (quoting Dura-Bilt Corp. v. Chase Manhattan Corp.,89 F.R.D. 87, 99 (S.D.N.Y. 1981)). "Factual differences will not render a claim atypical if the claim [arose] from the same event or practice or course of conduct that [gave] rise to the claims of the class members, and if it is based on the same legal theory." 1 H. Newberg A. Conte,Newberg on Class Actions, § 3:15, at 335 (4th ed. 2002) (citing Fuentesv. Shevin, 407 U.S. 67, 92 S. Ct. 1983 (1972)); see also In re United,122 F.R.D. at 256 (stating that a plaintiff's claims are typical of a class when his or her claims arise from the same set of facts that gave rise to the claims of the other class members and are based on the same legal theory); In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525,1532 (D. Mass. 1991). Simply stated, as long as the named plaintiff and the proposed class are injured by the same sequence of events, factual discrepancies among the various claims will not defeat typicality. SeeBaby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). *Page 11 
Here, the Defendants allege that Heritage is not typical of the proposed Class members it seeks to represent because it received a 50% consent-to-rate discount on its policy in effect through September 30, 2001, and hence, is expressly excluded by the Class definition. While Plaintiffs contend that the allegation that Heritage received a consent-to-rate discount on its 2000-2001 policy is irrelevant and unfounded, Heritage is clearly excluded by the plain language of the Class definition. Indeed, the proposed Class explicitly excludes "any Beacon policyholder that received a consent-to-rate discount during the period September 26, 2001 to March 22, 2006." See Ninth Amended Complaint ¶ 34. Therefore, having received a 50% consent-to-rate discount on its 2000-2001 policy, the Court finds that Heritage is unquestionably ineligible to serve as a Class representative in light of the Class definition.[8]
Furthermore, Defendants contend that the Named Plaintiffs do not meet Rule 23(a)(3)'s typicality requirements because they have a number of unique defenses against them. In particular, Defendants allege that when Vito's entered into a payment agreement with Beacon for its 2003-2004 policy, it agreed to waive any defenses regarding the application of any premium charge by Beacon to Vito's, and therefore, should be deemed atypical. As previously discussed, however, a plaintiff need not prove at the time of certification whether he or she will succeed once the merits of his case are reached. Eisen, 417 U.S. at 177, 94 S. Ct. at 2152. Just because certain defenses may apply to the Named Plaintiffs does not necessarily lead to the conclusion that their claims are not typical of those of the Class. See 1 H. Newberg A. Conte, Newberg *Page 12 on Class Actions, § 3:16, at 378 (4th ed. 2002) (stating that the typicality requirement may be satisfied where "[d]efenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class"). It is only where a named plaintiff is subject to unique defenses that would divert attention from the common claims of the class, that a Court should deem a party atypical. See In re Bank, 762 F. Supp. at 1532
(citing Grace Jerry CE v. Perception Tech. Co., 128 F.R.D. 165, 169
(D. Mass. 1989); see also Rodger v. Electronic Data Sys. Corp.,160 F.R.D. 532, 583 (E.D. N.C. 1995) (noting that while the typicality requirement may not be satisfied where a class representative is subject to a unique defense that could dominate the litigation, the mere availability of certain defenses against a class representative may not destroy typicality). Where, as here, Defendants unique defense relates solely to Vito's right to recover, and Defendants have not established that the defense would either divert attention from the Class' common claims or would affect the presentation of issues of liability, the Court finds that they have failed to establish that Vito's claim is atypical.
Accordingly, like the foregoing commonality analysis, the typicality requirement is satisfied for all the Named Plaintiffs, with the exception of Heritage. As a general matter, the claims of the remaining Named Plaintiffs would appear to be typical of the proposed Class members because each alleges damages based on conduct by the Defendants that is generally applicable to the entire Class. Here, each of the remaining Named Plaintiffs owned a worker's compensation policy that was substantially similar to those owned by the proposed Class members. Likewise, the harm alleged by those Named Plaintiffs — that Defendants engaged in a systematic scheme to divert $101 million to a small percent of policyholders through consent-to-rate discounts in lieu of equitably distributing the surplus as dividends — is identical to the harm *Page 13 
claimed by the proposed Class.[9] As a result, the Court finds that the remaining Named Plaintiffs' claims are typical and satisfy the requirements of Rule 23(a)(3).
 4 The Plaintiffs will Fairly and Adequately Protect the Interests of the Class
Finally, with regard to Rule 23(a)(4), plaintiffs in a class action must fairly and adequately represent the entire proposed class. Super. R. Civ. P. 23(a)(4). The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent.Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250
(1997). There are two factors to consider when determining whether the adequacy and fairness requirements are satisfied. The first consideration is whether counsel for the named plaintiff is "qualified, experienced, and generally able to conduct the proposed litigation." Eisen v. Carlisle Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). Second, it is necessary to eliminate, so far as possible, the likelihood that the litigants are involved in a collusive suit or that a named plaintiff has a conflict of interest or interest antagonistic to those of the remainder of the class. Id. The burden of disproving adequacy is on the party objecting to it. Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir. 1992).
It is well settled that "[i]nterests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorously prosecute the interests of the class." Stout v. Byrider, 228 F.3d 709, 717
(6th Cir. 2000). In order for a conflict to be sufficient to prevent a plaintiff from meeting the adequacy requirement, it must be fundamental and go to the specific *Page 14 
issues in controversy. See 1 H. Newberg A. Conte, Newberg on ClassActions, § 3:26, at 435 (4th ed. 2002). To determine this, the Court must examine whether an alleged conflict "go[es] to the very subject of the litigation." Caranci, 1999 WL 766974, at *17.
In this case, representation of the proposed Class by the Named Plaintiffs' counsel will be fair and adequate. Plaintiffs' local counsel, Donald J. Maroney (Maroney) and John B. Harwood (Harwood), as well as their out-of-state counsel, Jason B. Adkins (Adkins), John Peter Zavez (Zavez), and Noah Rosmarin (Rosmarin), are qualified to conduct this litigation. Maroney and Harwood are active Rhode Island practitioners whose combined resources and legal experience will enable them to conduct a litigation of this size and intricacy. Moreover, while Plaintiffs' out-of-state counsel do not practice regularly before this Court, they submitted an affidavit detailing — to the Court's satisfaction — their extensive experience and involvement with class action matters. Thus, as with Maroney and Harwood, the Court believes that Adkins, Zavez, and Rosmarin also have the combined resources and experience to adequately protect the interests of the proposed Class members.
As an additional component of 23(a)(4)'s requirements, "[c]lass representatives are expected to protect the interests of the class."Olden v. Gardner, 294 Fed. Appx. 210, 220 (6th Cir. 2008). Therefore, the Court must ensure that class representatives "exercise some oversight of the class counsel so as to avoid simply turning the conduct of the case over to the class counsel." Id. (citing Bovee v.Coopers Lybrand, 216 F.R.D. 596, 615 (S.D. Ohio 2003)). Here, after reviewing the briefing and deposition testimony presented, the Court finds that the Defendants have failed to establish that the Named Plaintiffs either lack an understanding of the key issues of the instant matter or have failed to exercise "some oversight" over Class counsel. *Page 15 
Furthermore, the Defendants assert that Heritage, Sterling, and J. Broomfield are not adequate Class representatives because they maintain animosity and hostility towards Beacon. However, despite the Defendants' best efforts, the Court finds that they have not met their burden to warrant disqualification of the remaining Named Plaintiffs. Indeed, courts have deemed "a plaintiff motivated by spite, or a grudge," unable to fairly and adequately protect the interests of the class, only in those instances where his or her animus "would override his [or her] amenability to negotiating with defendants, although beneficial to the class." See, e.g., Kamerman v. Ockap Corp., 112 F.R.D. 195, 197
(S.D.N.Y. 1986) (finding that where plaintiff, on his deathbed, swore his two sons — the executors of his estate — to continue litigating, he was an inadequate representative because it was an inappropriate attitude for a class representative and violated his fiduciary duty); Kayes v. PacificLumber Co., 51 F.3d 1449, 1464 (9th Cir. 1995) (stating that courts consider vindictiveness as a factor in evaluating adequacy of representation to insure that individuals who possess animus that would preclude the possibility of a suitable settlement are rendered ineligible). Here, the Defendants neither established that the parties may possess anything more than a minor grudge, nor that their animus or hostility would preclude the possibility of a suitable settlement. See,e.g., Wilson v. Great Am. Indus., Inc., 94 F.R.D. 570, 572 (N.D.N.Y. 1982) (noting that because a certain amount of animosity between plaintiffs and defendants is to be expected, a plaintiff's small personal animus is insufficient to render an otherwise qualified class representative inappropriate or unduly antagonistic).
As a result, the Court is satisfied that there is no conflict or antagonistic interest between the remaining Named Plaintiffs and any of the proposed Class members that would prevent them from vigorously litigating the instant matter. Except for Heritage, the Defendants have failed to present any facts to indicate that the Named Plaintiffs' interests in this case are different or *Page 16 
contrary to any of the proposed Class members' interests.[10] Again, the claims of each Named Plaintiff arise from the same set of facts that give rise to the claims of the proposed Class members. Further, the Named Plaintiffs bring this action based on their right to receive dividends which is common to all policyholders in this litigation. Thus, the Court finds that the remaining Named Plaintiffs satisfy the requirements of Rule 23(a)(4).
 B Rule 23(b)
After the four prerequisites of Rule 23(a) are satisfied, the Court must next determine whether an action is maintainable under Rule 23(b). An action is maintainable under Rule 23(b) when one of the subsections is satisfied. Our Supreme Court has stated that, given the choice, courts should proceed under Rule 23(b)(1) or 23(b)(2) because of their broaderres judicata effect.[11] DeCesare, 852 A.2d at 490. However, when faced with a heterogeneous composition, the additional protections afforded by the opt-out and notice provisions of Rule 23(b)(3) are necessary and certification should be pursued under that rule. Id. In this case, in light of the findings set forth below, the Court finds that certification under 23(b)(2) is appropriate. *Page 17 
 1 Rule 23(b)(2)
It is well settled that the Rhode Island Superior Court has sole jurisdiction over issues of equity, such as the granting of an injunction. See G.L. 1956 § 8-2-13. Thus, the Court's jurisdiction in connection with this matter is predicated on the discussion that follows. Rule 23(b)(2) is intended to address those cases in which broad, class-wide injunctive or declaratory relief is appropriate or necessary. Fed.R.Civ.P. 23(b)(2) Advisory Committee Note; see alsoDeCesare, 852 A.2d at 488-89. Under Rule 23(b)(2) a court may certify a class where
 "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . ." Super. R. Civ. P. 23(b)(2).
Broken into its component parts, under 23(b)(2) a prospective class must establish two factors: "(1) the opposing party's conduct or refusal to act must be `generally applicable' to the class [as a whole], and (2) final injunctive or corresponding declaratory relief must be requested for the class." 7A Wright Miller, Federal Practice and Procedure, Civil 2d § 1775, at 447-48 (1986). Certification is appropriate under Rule 23(b)(2) where the litigation seeks to define the relationship between the defendant and the world at large and the relief sought by the named plaintiff will benefit the entire class. Baby Neal, 43 F.3d at 58;see also Jones v. Diamond, 519 F.2d 1090, 1100 (5th Cir. 1975). Rule 23(b)(2) certification is also appropriate where a party seeks injunctive relief requiring the defendant to perform its contractual or legal obligations. See, e.g., DeCesare, 852 A.2d at 489-90; see also Bradfordv. AGCO Corp., 187 F.R.D. 600, 605 (W.D. Mo. 1999). *Page 18 
However, a court may not certify a class under Rule 23(b)(2) if "the appropriate final relief relates exclusively or predominantly to money damages." DeCesare, 852 A.2d at 489 (quoting Fed.R.Civ.P. 23(b)(2) Advisory Committee Note); see also Eisen, 391 F.2d at 564 (stating that "[Rule 23(b)(2)] . . . is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory"). Our Supreme Court has expressly affirmed that "[i]nsignificant or sham requests for injunctive relief should not provide cover for [Rule 23](b)(2) certification of claims that are brought essentially for monetary recovery." DeCesare, 852 A.2d at 489 (citing Robinson v. Metro-NorthCommuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001); see also Carvalho,457 A.2d at 617 (noting that "[g]enerally, the mere request for an injunction does not automatically invoke equity jurisdiction"). A party may not transform a claim that predominantly seeks damages into an equitable action merely by asking for an injunction that orders the payment of money. See Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979).
Here, it is beyond doubt that the conduct comprising the crux of Plaintiffs' allegations is generally applicable to the proposed Class members as a whole. Indeed, none of the eligible Class members or remaining Named Plaintiffs either received consent-to-rate discounts during the Class period or received dividends during the years 2002-2005.[12] Moreover, although *Page 19 
Defendants contend that Plaintiffs' request for injunctive and declaratory relief is simply a procedural sham designed to avoid certification under 23(b)(3), the Court disagrees. At the core of Plaintiffs' allegations is that the Defendants engaged in a systematic scheme to divert over $101 million to a small percentage of its policyholders — through consent-to-rate discounts — rather than distributing it equitably to all its policyholders. Plaintiffs allege that as a result of this scheme, they have been deprived of the dividends that they would have received but for the Defendants' breaches. Accordingly, while at first glance it appears that Plaintiffs essentially seek monetary damages and that certification under 23(b)(2) is inappropriate, the Court's inquiry does not end there.
Indeed, it is well settled that a policyholder in a mutual company is entitled to participate in the annual surplus of the company, which represents excess premiums or overcharges paid by the policyholders. SeeTierney v. John Hancock Mut. Life Ins. Co., 58 Mass. App. Ct. 571, 576,791 N.E.2d 925, 930-31 (Mass. App. Ct. 2003). However, a policyholder's right to dividends is triggered only after the divisible surplus has been ascertained and apportioned. See 5 Lee R. Russ Thomas F. Segalla,Couch on Insurance 3d § 80:51, at 80-56 (2005) (citing Ellis v. MutualLife Ins. Co., 187 So. 434, 448 (1939)) (stating that "[a] policyholder of a mutual life insurance company is only entitled to dividends after a divisible surplus has been ascertained and apportioned"). Until a dividend is declared, a policyholder has no right of action at law to recover any part of the fund applicable to that purpose. See Ellis,187 So. at 448.
For that reason, it follows that the instant matter does not relate exclusively or predominantly to money damages. Even if the Plaintiffs were successful in establishing that the Defendants had breached their fiduciary duty and implied duties of good faith and fair dealing, as set forth above, they would still have no right to compel the payment of dividends. Therefore, *Page 20 
the Court finds that the actual relief sought by the Plaintiffs is a declaration that the Defendants have breached their fiduciary and implied duties, and an injunction compelling Beacon's board to convene and consider whether, in light of their fiduciary and implied duties, a dividend should have been declared in each or any of the years 2002-2005.
Accordingly, while it is not lost on the Court that money is a component of the relief sought (e.g. monetary damages, attorneys' fees, punitive damages), declaratory and injunctive relief does not preclude the granting of money damages within the Class, and here, money damages is not the primary relief requested. Under the circumstances, the Court finds that only declaratory and injunctive relief — not a judgment of money damages — would afford the Plaintiffs with adequate relief.[13]See DeCesare, 852 A.2 at 490 (certifying the class under 23(b)(2) where the Court found that equitable relief was the only way to fully restore the plaintiffs to the position they had originally bargained for under the agreement). In light of the determinations set forth herein, the Court finds that the proposed Class should be certified under Rule 23(b)(2).
 III Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel at the hearing and in their memoranda, the Court finds that Plaintiffs have met the requirements set forth in Rule 23 of the Rhode Island Rules of Civil Procedure. As a result, the Court deems class certification appropriate and grants Plaintiffs' motion for class certification. *Page 21 
Although the proposed Class may be certified under 23(b)(2), the Court finds that Heritage fails to meet the typicality and adequacy requirements of 23(a), and therefore, may not serve as a Class representative. However, the Court grants the remaining Named Plaintiffs' requests to serve as Class representatives.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] See Heritage Healthcare Servs., Inc. v. Marques, No. 08-160-MP (R.I. filed Jan. 6, 2011); Heritage Healthcare Servs., Inc. v. BeaconMut. Ins. Co., No. PB-02-7016, 2009 WL 3328481 (R.I. Super. Ct. Apr. 15, 2009); Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2008 WL 4376187 (R.I. Super. Ct. Sept. 4, 2008); HeritageHealthcare Servs., Inc. v. Marques, No. PB-06-4420, 2007 WL 2692031
(R.I. Super. Ct. Sept. 6, 2007); Heritage Healthcare Servs., Inc. v.Marques, No. PB-06-4420, 2007 WL 2405917 (R.I. Super. Ct. Aug. 9, 2007);Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2007 WL 1234481 (R.I. Super. Ct. Apr. 17, 2007); HeritageHealthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016,2005 WL 2101412 (R.I. Super. Ct. Aug. 29, 2005); Heritage HealthcareServs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2004 WL 253547
(R.I. Super. Ct. Jan. 21, 2004).
[2] "[B]ecause Rhode Island['s] Rule 23 is a carbon copy of Rule 23 of the Federal Rules of Civil Procedure," the Court may look to federal law for aid in interpreting Rule 23. Zarrella, 824 A.2d at 1262 n. 16 (citingCiunci, Inc. v. Logan, 652 A.2d 961, 962 (R.I. 1995)); see also DeCesare,852 A.2d at 486.
[3] "In Eisen, the Supreme Court held that the district court's preliminary hearing on the merits of the case — concluding that the plaintiff was `more than likely' to prevail — was inappropriate for the purpose of determining whether a class action could be maintained." SeeGariety v. Grant Thornton, LLP, 368 F.3d 356, 365-66 (4th Cir. 2004) (quoting Eisen, 417 U.S. at 177-78, 94 S. Ct. at 2152). Indeed, Eisen
serves to restrict a court from expanding its Rule 23 certification analysis to include consideration of whether the proposed class is likely to prevail ultimately on the merits. Id. (citing Castano v. AmericanTobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)); see also 5 Moore'sFederal Practice ¶ 23.84[2][a] (3d ed. 2003). Post Eisen, however, the Supreme Court has affirmed that "sometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question." General Tel. Co. of the Southwest v. Falcon,457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982). Therefore, "while an evaluation of the merits to determine the strength of plaintiffs' case is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits." Gariety, 368 F.3d at 365-66; see also Szabo v. BridgeportMachs., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001) (stating that "the proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23. . . . Before deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23. . . .").
[4] As was so eloquently and appropriately written by our Supreme Court in its recent decision in Heritage Healthcare Servs., Inc. v. Marques, the instant matter — "with [its] complex and circuitous procedural travel" — began its "serpentine journey" in 2002. See No. 08-160-MP, slip. op. at 1 (R.I. filed Jan. 6, 2011). Therefore, the Court undoubtedly acknowledges and concedes that this action, presently in its Ninth Amended Complaint, is well beyond the early stages of the litigation.
[5] Dividends paid to a policyholder in a mutual insurance company are essentially a return of excess premium paid by policyholders. A policyholder's dividend is calculated as a percentage of their premium, and paid as a single percentage discounted off each policyholder's annual premiums. Notably, between the years 2003 through 2005, over 80% of the policies issued by Beacon were under $10,000, and the dividend ranged from 10% of the premium in 1998 to 5% in 2001 to 12% in 2005.
[6] The Court emphasizes that its mention of aggregated claims is for practicability purposes only and does not go to the legal issue of jurisdiction of the Superior Court in this case.
[7] In fact, this Court has previously stated in its April 15, 2009 Decision denying Defendants' Motion for Summary Judgment that "this case involves whether a fiduciary breached its duty by failing to distributedividends equitably." Heritage Healthcare, 2009 WL 3328481, at *3 (emphasis added).
[8] While the Court acknowledges that under Rule 23(d) it is authorized to alter or amend the Class definition at its discretion, under the circumstances it declines to do so. See Cabana, 612 A.2d at 686 (stating that "Rule 23(d) grants the [C]ourt power to subdivide, modify, or decertify the class at any time prior to judgment and serves as a vehicle through which the [C]ourt can change its initial determination as the case develops"). Indeed, were the Court to amend the Class period so as to avoid issues with Heritage's 2000-2001 policy discount, it is unclear whether Heritage would even qualify as a Class member, as Plaintiffs themselves assert that Heritage's last policy expired on September 30, 2001.
[9] Defendants contend that Swimming Pool's claim should also be deemed atypical because they began purchasing short-term worker's compensation policies from Beacon as of April 2005, and were therefore, ineligible to receive dividends. Nevertheless, the Court finds that Swimming Pool's claim satisfies Rule 23(a)(3)'s typicality requirement in light of the fact that they failed to receive dividends in 2002, 2003, and 2004, despite being eligible.
[10] In light of Heritage having received a consent-to-rate discount during the relevant Class period, the Court finds that such a conflict is fundamental, goes to the very subject matter of the litigation, and warrants their disqualification as an adequate Class representative. SeeKenavan v. Empire Blue Cross Blue Shield, No. 91-2393, 1993 WL 128012, at *5 (S.D.N.Y. Apr. 19, 1993).
[11] Unlike classes certified under Rule 23(b)(3), members of a class certified under Rule 23(b)(1) or (b)(2) cannot opt out of the action to pursue individual suits. See DeBoor v. Mellon Mortg. Co., 64 F.3d 1171, 1175
(8th Cir. 1995). Therefore, certification under (b)(1) or (b)(2) is preferred because courts fear that individual claims brought by members opting out of a (b)(3) class might prejudice other class members or cause inconsistencies and compromises in future litigation. SeeBoroherding-Dittloff v. Transworld Sys., Inc., 185 F.R.D. 558, 562 (W.D. Wis. 1999).
[12] The Court notes that as part of the July 27, 2007 Consent Order (Consent Order) between Beacon and the Department of Business Regulation, Beacon agreed to "distribute approximately Seven Million Dollars ($7,000,000) (the `Policy Holders' Pool') to Eligible Policyholders." (Defs.' Supplemental Opp'n Mem. Ex. A ¶ 4.) Under the terms of the Consent Order, "Eligible Policyholders" consisted of those policyholders whose insurance policies had a commencement date from October 1, 2005 through September 30, 2006 (the `Applicable Period') and remained in full force for at least six (6) months of the policy period."Id. While a Class member's receipt of funds from the Policy Holders' Pool may affect that Class member's ultimate monetary recovery, if any, the Court finds that it does not affect the Class member's right to participate in the Class or the Class' claims with respect to Defendants' liability and the propriety of the injunctive and declaratory relief sought.
[13] In light of the foregoing, the Court finds that no conflict or antagonistic interest exists between past and present policyholders, as each merely seeks a deliberation and declaration by Beacon's board as to whether a dividend should have been issued in the years 2002-2005. SeeFalcone, 457 U.S. at 156, 102 S. Ct at 2372 (citing East Texas ManorFreight Sys., Inc. v. Rodriquez, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896-97
(1976)) (stating that a class representative is adequate where he or she "`possess[es] the same interest and suffer[s] the same injury as the class members'").